2005 VT 1

## Fletcher Hill, Inc. v. Susan Crosbie

[872 A.2d 292]

No. 02-348

Present: **Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed January 14, 2005

Motion for Reargument Denied March 9, 2005

*Matthew J. Ragaller* of *Boylan Associates, P.C.*, Springfield, for Plaintiff-Appellant.

*Martha M. Davis* of *Law Office of Martha M. Davis*, Windsor, for Defendant-Appellee.

¶ 1. **Skoglund, J.** This action arises out of the construction of a modular home by plaintiff Fletcher Hill, Inc. for defendant Susan Crosbie. Fletcher Hill appeals (1) the trial court's denial of its request for attorney's fees, and (2) the court's determination of the rate of prejudgment interest. We affirm.

¶ 2. Crosbie entered into a construction contract with Fletcher Hill for construction and installation of her modular home. The contract contains a "late fee" provision which states that "[a]ll outstanding balances over 30 days due from date of invoice will be charged 2% per month interest plus attorney's fees." Disputes arose during the course of construction, and ultimately Crosbie refused to pay Fletcher Hill the amount due on the final invoice. Fletcher Hill filed a mechanic's lien against Crosbie's property, and then filed suit for breach of contract. Crosbie counterclaimed, alleging that Fletcher Hill breached the contract because it did not complete the installation in a workmanlike

manner. She further claimed that Fletcher Hill breached the contract by not paying its subcontractors, thereby subjecting her property to a lien filed by a subcontractor. Indeed, after filing a contractor's lien on the property, the complaining subcontractor obtained a judgment for $3500 against Fletcher Hill and then served Crosbie with a trustee process for that judgment.

¶ 3. At trial, the jury found that Crosbie breached the contract by failing to pay the final invoice and awarded Fletcher Hill $15,067. The jury also found that Fletcher Hill breached the contract by failing to perform in a workmanlike manner and awarded Crosbie $4000 for "sums spent to remedy any defects or omissions." At a subsequent hearing to determine attorney's fees and prejudgment interest, the trial court refused to award either party attorney's fees, and awarded Fletcher Hill prejudgment interest at the statutory rate of 12% per year from the date the suit was filed. Fletcher Hill appealed. We review the trial court's ruling on attorney's fees and prejudgment interest for abuse of discretion. *Young v. N. Terminals, Inc.*, 132 Vt. 125, 130, 315 A.2d 469, 472 (1974).

¶ 4. The court denied the parties' requests for attorney's fees for two reasons. First, the court held that "to base an award of attorneys fees on a contract which the plaintiff violated would be contrary to law." In short, the court held that Fletcher Hill could not collect fees under a contract that the jury found it had breached. Second, the court ruled that under 9 V.S.A. § 4007(c) neither party had substantially prevailed, so each party had to pay its own attorney's fees.

¶ 5. "The American Rule ordinarily prohibits an award of attorney's fees absent a specific statutory provision or an agreement of the parties." *Galkin v. Town of Chester*, 168 Vt. 82, 91, 716 A.2d 25, 31 (1998). An award of attorney's fees is proper where a contract specifically provides for them. *Foster & Gridley v. Winner*, 169 Vt. 621, 624, 740 A.2d 1283, 1287 (1999) (mem.); see also *Mt. Everest Ski Shops, Inc. v. Nordica USA, Inc.*, 736 F. Supp. 523, 527 (D. Vt. 1989) ("A contract, too, may vary the application of the [American] rule; the court may depart from the American Rule only to the extent which the contract provides."). When a contract provides for attorney's fees, Vermont courts are loathe to revise the agreement struck by the parties and deny them the benefit of their bargain. See *Ianelli v. Standish*, 156 Vt. 386, 389, 592 A.2d 901, 903 (1991) (granting attorney's fees to defendant in dispute over a real estate contract).

¶ 6. Here, the parties negotiated and agreed to a "late fee" provision that provided for attorney's fees in the event of a balance overdue

more than thirty days from the invoice date. Because this case involves a construction contract, we look to the specific statutes that the Legislature has promulgated concerning disputes arising therefrom. See 9 V.S.A. §§ 4001-4009 (setting forth, inter alia, owners' and contractors' payment obligations in the context of construction contracts). Under those statutes, the default position is that "[t]he owner shall pay the contractor strictly in accordance with the terms of the construction contract." *Id.* § 4002(a). However, the owner's duty to pay the contractor, including a "late fee" provision like the one at issue here, must be considered in light of 9 V.S.A. § 4007(a):

> Nothing in this chapter shall prevent an owner … from withholding payment in whole or in part under a construction contracting an amount equalling the value of any good faith claims against an invoicing contractor or subcontractor, including claims arising from unsatisfactory job progress, defective construction, disputed work or third-party claims.

¶ 7. The trial court did not abuse its discretion in refusing to invoke the "late fee" provision concerning attorney's fees because Crosbie had a good faith basis under § 4007(a) for withholding payment of the outstanding balance for two reasons. First, as the jury found, Fletcher Hill breached the contract by failing to complete the installation of the home in a workmanlike manner. Indeed, Crosbie's counterclaim describes a list of substantial deficiencies, including the fact that the two structural halves of the house were not properly set on the foundation, with one side of the house resting approximately three-quarters of an inch higher than the other. The jury confirmed Fletcher Hill's breach by answering Jury Interrogatory 4 — "Did the Plaintiff breach the contract by not performing in a workmanlike manner at least in part?" — in the affirmative, and awarding Crosbie $4000. In addition, in assessing Fletcher Hill's request for attorney's fees, the trial court noted that "there was an adequate basis in the record, had [the jury] chosen to do so, to provide more relief to the defendant," and that as a result of the "issues of poor workmanship" and "the substantial deficiencies in the construction," Crosbie "was within her rights to withhold funds under the circumstances."

¶ 8. Second, prior to the time the home became ready for occupancy, the unpaid subcontractor filed an action and a mechanic's lien against Crosbie, demanding $5595 for labor and materials. Thus, the record reveals that at the time the $15,000 final payment came due, Crosbie was aware of the deficiencies in the construction of the home and her

potential liability to the subcontractor. On this basis, the trial court declined to apply the prompt payment provision of the contract to the issue of attorney's fees after the jury verdict, reasoning that "to base an award of attorney's fees on a contract which the plaintiff violated would be contrary to law." The trial court's decision correctly avoids the unfairness that would follow from penalizing Crosbie for, in effect, miscalculating the amount she was entitled to withhold. It also comports with the Legislature's intent, as evidenced by § 4007(a), to permit a party to withhold payment until after the parties resolve their disputes, assuming the withholding party had a good faith basis.

¶ 9. The two cases relied upon by the dissent in reasoning that the contract provision should govern, *post*, ¶ 29, do not alter the analysis. First, neither *Weidner v. Szostek*, 614 N.E.2d 879 (Ill. App. Ct. 1993), nor *Fenner & Shea Construction Co. v. Wadkins*, 511 P.2d 924 (Colo. Ct. App. 1973), addressed a statutory scheme governing construction contracts similar to §§ 4001-4009. Furthermore, in neither case did the trier of fact find that the contractor breached the contract by its deficiencies in workmanship, as the jury in this case did when it answered Jury Interrogatory 4 in the affirmative.

¶ 10. The trial court also correctly declined to award attorney's fees under 9 V.S.A. § 4007(c). Section 4007(c) states that "[n]otwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorneys' fees in an amount to be determined by the court or arbitrator, together with expenses." Based on the jury's verdict and the damage awards, both parties requested an award of fees. The court decided that neither party was entitled to attorney's fees under the statute because neither had "substantially prevailed."

¶ 11. On appeal, Fletcher Hill argues that the court erred because it did substantially prevail in this action. It relies on simple mathematics, pointing to the fact that the jury's verdict was a net award of $11,067 in its favor. To support its position, Fletcher Hill relies on an unpublished Washington Court of Appeals opinion, which held that the trial court properly awarded attorney's fees based on one party's receipt of a net judgment. See *Durall v. Simon*, No. 18760-8-III, 2000 WL 1476157, at *3 (Wash. Ct. App. Oct. 5, 2000) (holding that because plaintiff received net judgment, trial court did not abuse its discretion in finding plaintiff was substantially prevailing party and thus entitled to fees).

¶ 12. While the mandatory language of § 4007(c) requires an award of attorney's fees to a substantially prevailing party, the ques-

tion of whether any party to a lawsuit substantially prevailed is left to the trial court's discretion. See, e.g., *De Witt v. Liberty Leasing Co.*, 499 P.2d 599, 601 (Alaska 1972) ("The determination of which party prevailed is committed to the discretion of the trial court and is reviewable on appeal only for abuse."). While acknowledging that, "in terms of sheer dollars and cents," plaintiff prevailed, the court did not "think the plaintiff substantially prevailed in this case. I think it was clearly a split decision." The court further explained:

> There were clearly issues of poor workmanship ... in this case. The defendant was within her rights to withhold funds under the circumstances. There w[ere] substantial deficiencies in the construction, not the least of which is that a section of this house was offset, and other items too numerous to mention. ... [T]he point was, it was not a clear victory in favor of the plaintiff.

¶ 13. We have applied § 4007(c) to require an award of attorney's fees, but under circumstances that contrast sharply with this case. For instance, we have held that where a subcontractor's claims against a contractor were dismissed on summary judgment, the trial court correctly awarded attorney's fees to the contractor as the substantially prevailing party. *DJ Painting, Inc. v. Baraw Enters.*, 172 Vt. 239, 246-47, 776 A.2d 413, 419-20 (2001). Here, we have a jury verdict that resulted in awards to both parties. In addition, the trial court, in calculating the interest due to Fletcher Hill, reduced the principal amount by $3500 — the amount of the yet-to-be-satisfied judgment against Fletcher Hill in favor of the subcontractor who filed a lien and a trustee process against Crosbie. Fletcher Hill fails to factor that reduction into its mathematical solution of which party substantially prevailed. In light of the facts of this case, we find the court's exercise of discretion regarding attorney's fees sustainable.

¶ 14. Neither the language of § 4007(c) nor the case law cited by the dissent dictates that determining whether a party substantially prevailed turns on a simple mathematical comparison of the parties' respective recoveries. First, although the dissent is correct that the statute "accords no discretion to the court to deny fees where it applies," *post*, ¶ 34, determining "where it applies" — or identifying the substantially prevailing party — falls within the trial court's discretion, and does not flow automatically from the calculation of the net victor. Furthermore, the use of the words "*the* substantially prevailing party," 9 V.S.A. § 4007(c) (emphasis added), does not imply that

there must be a substantially prevailing party in every case. It indicates, as the dissent points out, that there can be, at most, one substantially prevailing party. Applying the dissent's "net victor" approach, however, would mandate an award of fees in every construction contract case that does not result in a "draw," since the net victor would automatically qualify as the substantially prevailing party.

¶ 15. The cases cited by the dissent do not compel the conclusion that the party with a net verdict is automatically the substantially prevailing party. Indeed, several of the cases cited by the dissent make clear that identifying the substantially prevailing party is a matter for the trial court's discretion and cannot be reduced to merely calculating the net verdict. See *De Witt*, 499 P.2d at 601 ("The determination of which party prevailed is committed to the discretion of the trial court and is reviewable on appeal only for abuse."); *Schmidt v. Colonial Terrace Assocs.*, 694 P.2d 1340, 1344 (Mont. 1985) ("'No one factor should be considered in determining the prevailing party for the purpose of attorney fees. The party that is awarded a money judgment in a lawsuit is not necessarily the successful or prevailing party.'" (quoting *E.C.A. Envtl. Mgmt. Servs., Inc. v. Toenyes*, 679 P.2d 213, 217-18 (Mont. 1984))); see also *In re Marriage of Murphy*, 763 N.E.2d 933, 938 (Ill. App. Ct. 2002) ("Like those who have grappled with the issue before us, we cannot definitively say what the term 'substantially prevail' means in all cases."), *rev'd on other grounds*, 786 N.E.2d 132 (Ill. 2003).

¶ 16. Significantly, with one exception, the cases cited by the dissent for the proposition that the net victor is the substantially prevailing party do not address the term "substantially prevailing party." See *De Witt*, 499 P.2d at 600 (statute awarded attorney's fees to the "prevailing party"); *Moss Constr. Co. v. Wulffsohn*, 253 P.2d 483, 484-85 (Cal. Dist. Ct. App. 1953) (statute awarded attorney's fees to the "successful party"); *Corley v. Rivertown, Inc.*, 863 So. 2d 1244, 1246 (Fla. Dist. Ct. App. 2004) (statute awarded attorney's fees to the "prevailing party"); *Szoboszlay v. Glessner*, 664 P.2d 1327, 1333-34 (Kan. 1983) (statute awarded attorney's fees to the "successful party"); *Schmidt*, 694 P.2d at 1345 (contract awarded fees to the "prevailing party"). Thus, these cases do not control our interpretation of § 4007(c). The U.S. Supreme Court has pointed out that these terms are not synonyms, observing that fee-shifting statutes "contain *varying standards* as to the precise degree of success necessary for an award of fees — such as whether the fee claimant was the 'prevailing party,' the 'substantially prevailing' party, or 'successful.'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680,

684 (1983) (emphasis added). The Second Circuit has observed that, in the context of a fee-shifting statute, "the term 'substantially' . . . alters the *amount* or *degree* of recovery necessary to obtain fees." *Union of Needletrades, Indus. & Textile Employees v. INS*, 336 F.3d 200, 208 (2d Cir. 2003) (emphasis in original).

¶ 17. The one case cited by the dissent involving a statute identical to § 4007(c) suggests that identifying the net victor does not end the inquiry. In *Bridges PBT v. Chatta*, 2003 PA Super. 122, 821 A.2d 590, the court recognized that requiring an award of attorney's fees simply because a party won a net judgment would effectively "write out the modifier 'substantially.'" 2003 PA Super. ¶ 9. Because we "presume that legislative language is inserted advisedly and not intended to create surplusage," *In re South Burlington-Shelburne Highway Project*, 174 Vt. 604, 606, 817 A.2d 49, 52 (2002) (mem.), we refuse to read "substantially" out of § 4007(c) by equating the "substantially prevailing party" with the party holding a net judgment. Cf. *In re Marriage of Murphy*, 763 N.E.2d at 938 ("We thus presume that the legislature was familiar with the construction courts had previously given to the term 'prevail' and opted to require instead that a party 'substantially' prevail to prevent application of the lower threshold for 'prevailing' that had been applied in other contexts.").

¶ 18. Next, we affirm the trial court's interest rate determination. The court awarded Fletcher Hill prejudgment interest from the date the suit was filed, but declined to use the 2% per month interest rate specified in the contract. Instead, the court utilized the statutory interest rate of 12% per annum.

¶ 19. The court did not abuse its discretion when it declined to apply the interest rate contained in the contract's "late fee" provision because, as explained above, the record indicated that Crosbie had a good faith basis for withholding the outstanding balance. After concluding it was not bound by the contractual interest rate, the court correctly applied the statutory 12% interest rate found throughout 9 V.S.A. §§ 4001-4009. For example, pursuant to 9 V.S.A. § 4002(d), payments to the contractor delayed beyond the due date will accrue interest, beginning on the twenty-first day, at a rate equal to that established by 12 V.S.A. § 2903(b). Section 2903(b) governs interest on judgment liens and sets the rate at 12% per annum. See also 9 V.S.A. § 4003(d) (setting interest rate for late payments owed by contractor to subcontractor at the 12% annual rate established by 12 V.S.A. § 2903(b)); 9 V.S.A. § 4005 (pegging interest rate for overdue retainage

to the interest provisions of §§ 4002-4003). On this basis, we hold that the trial court's imposition of a 12% interest rate was not error.

¶ 20. Finally, Fletcher Hill argues that the court erred in awarding interest from the date the complaint was filed, claiming instead that interest should have been awarded from the date of Crosbie's breach. Fletcher Hill failed to object to this ruling at the post-trial hearing, and issues raised for the first time on appeal will not be considered by this Court. *In re Lorentz*, 2003 VT 40, ¶ 5, 175 Vt. 522, 824 A.2d 598 (mem.). Because Fletcher Hill assented to the date chosen by the court at the post-trial hearing, we treat the award of interest from the date of filing as the law of the case, and the trial court's ruling on this issue stands.

*Affirmed.*

¶ 21. **Dooley, J.,** dissenting. Noting that the jury could have awarded more relief to defendant than it did, the trial court apparently felt that it would do rough justice by refusing to award attorney's fees to either party and by reducing plaintiff's interest recovery rate by half. If the attorney's fees issue involved only a matter of discretion in the trial court, I would affirm for the reasons stated by the trial judge and the majority. It is not, however, a matter solely of discretion, and the decision is contrary to the clear law governing this issue. Similarly, the trial court's interest rate ruling is not sustainable on the rationale stated by the trial court or the majority, but if a further record is made, might be sustained on a different basis. Accordingly, I would reverse the attorney's fees denial and remand the interest rate issue. I dissent from the majority's decision to uphold the trial court rulings.

¶ 22. The central foundation of the majority's analysis of this appeal on both issues is that the jury found that defendant withheld the full final installment of her payment for the house in good faith and, despite the fact that the jury awarded plaintiff much more than it awarded defendant, plaintiff's claim for attorney's fees and contractual interest is defeated by this finding. In fact, the jury made no such finding of good faith, and the finding it did make is contrary to the majority's assertion.

¶ 23. Plaintiff brought this action for $15,067, the amount that it asserted was due under the construction contract, plus attorney's fees, interest, and costs. Defendant answered that plaintiff could not recover because it breached the contract in numerous respects, including that it failed to deliver the house at the time specified in the contract and failed to construct the house in accordance with the contractual specifications in numerous respects. Defendant also counterclaimed

for amounts that would allow her to complete the house in accordance with the specifications, for amounts to cover items that could not be fixed, and for costs and expenses in defending claims of unpaid sub-contractors.

¶ 24. A major dispute at trial was whether defendant was justified in refusing to pay the entire last installment because of the deficiencies she claimed. Relying on defendant's statements, plaintiff asserted that defendant had withheld the full amount not in good faith, but instead out of anger at plaintiff and to deprive it of any profit on the sale of the home. Defendant asserted, to the contrary, that the deficiencies in the house exceeded the amount of the last payment due under the contract and justified her action in refusing to make that payment.

¶ 25. The trial court instructed the jury on the law, drawing heavily on our decision in *VanVelsor v. Dzewaltowski*, 136 Vt. 103, 105-06, 385 A.2d 1102, 1104 (1978). *Dzewaltowski* provides one possible outcome of a builder/owner contract dispute: "[I]f the contractor has rendered substantial performance of the contract, failing only in some minor particulars, the owner may set off against the contract price a fair allowance to make good the defects." 136 Vt. at 106, 385 A.2d at 1104. The trial court structured its instructions around this sentence, finding that it went to the heart of the parties' dispute. The question of whether a party has substantially performed under a contract is a question of fact. *Vt. Structural Steel Corp. v. Brickman*, 126 Vt. 520, 524, 236 A.2d 658, 661 (1967). Thus, the court instructed the jury to look first at whether plaintiff substantially performed and, if it found substantial performance, to look at whether any offset should be made.

¶ 26. The court submitted six interrogatories to the jury. The jury was first asked whether plaintiff substantially performed the contract — defined in the instructions as an approximation of complete performance such that any defects "are not so serious as to deprive the owner of the intended use of the property" — and it answered "yes" to that question. It was then asked the amount plaintiff was owed under the contract — defined in the instructions as "the amount due under the contact minus a fair allowance for defects or omissions in perform-ance" — and the jury answered "$15,067," the exact amount plaintiff claimed was due it under the contract. In response to question three, it found that defendant "breach[ed] the contract by not paying the Plaintiff the amount reasonably due it under the contract." The jury went on to deal with defendant's counterclaim, finding plaintiff breached "by not performing in a workmanlike manner at least in

part" and that the sum necessary to remedy any defects and omissions in plaintiff's performance was $4,000.

¶ 27. Contrary to the majority's position, the jury was never asked and never found that defendant acted in good faith in withholding the entire last payment of $15,067 because of her claims of omissions or defective work against plaintiff. Nor did the jury find, as claimed by the majority, that defendant erred only in "miscalculating the amount she was entitled to withhold." To the extent the jury verdict can be said to have addressed the good faith issue, it is inconsistent with such findings and consistent with plaintiff's view that defendant withheld the whole final payment out of spite. The jury concluded that plaintiff substantially performed, that the offsets were relatively minor and did not interfere with defendant's use of the property, and that defendant breached by not paying the amount *reasonably due*. They found offsets totaling only 26.5% of the unpaid last installment, less than 4% of the contract amount.

¶ 28. Without a jury finding that defendant withheld payment in good faith, and with a finding that plaintiff substantially performed and defendant did not pay the amount reasonably due, there are no grounds for denying attorney's fees to plaintiff. Indeed, I believe that plaintiff is entitled to an award of fees under either of its theories: the contract provision and the prompt payment act, 9 V.S.A. § 4007(c). The contract specifically provided for the recovery of attorney's fees paid to collect "outstanding balances over 30 days due from date of invoice." The jury found that plaintiff had substantially performed, and therefore plaintiff could still enforce the contract's terms.

¶ 29. The identical circumstances arose in *Fenner & Shea Construction Co. v. Wadkins*, 511 P.2d 924 (Colo. Ct. App. 1973), in which a construction contractor brought suit for breach of contract for failure to pay and the owners counterclaimed, arguing that the contractor had breached the contract by performing in an unworkmanlike manner. *Id.* at 925. The trial court found that the construction company "had substantially performed its obligations under the contract and that to the extent that it had failed to perform fully, its judgment against the [owners] would be reduced in an amount equal to that necessary to cure the complained of defects in workmanship." *Id.* The owners argued on appeal that the contractor should not receive fees because the defective work was a breach of the contract and therefore the contractor could not enforce the contract. The appeals court rejected this argument, holding that where a party substantially performs, he "cannot be charged with a breach" such that he cannot recover attor-

ney's fees under a contractual provision providing for recovery of such fees. *Id.*; see also *Weidner v. Szostek*, 614 N.E.2d 879, 882-83 (Ill. App. Ct. 1993) (concluding that where contractor has substantially performed its contractual obligations, it can collect attorney's fees under contractual provision despite an offset for "the amount necessary to repair or replace the items not completed within the terms of the contract"). Contrary to the majority's statement, *Fenner* directly addresses plaintiff's contractual claim. In *Fenner*, the trial court found that the contractor's defects in workmanship breached the contract, but awarded attorney's fees because the contractor had substantially performed and the amounts withheld were far in excess of a reasonable setoff.

¶ 30. Without citation to any authority, the majority concludes that the court could deny plaintiff attorney's fees under the contract for two reasons. The first is that defendant claimed numerous deficiencies in performance, the jury found a few, and the trial court concluded that the jury could have found more. In asserting this reason, the majority, like the trial judge, is warring with the jury determination that plaintiff substantially performed. Indeed, the majority's view is transparent because it details one of the alleged construction defects, a defect that the jury could not have found, consistent with the monetary amount of its verdict for defendant. The jury determines the facts in this case, not this Court or the trial judge, and its factual findings are directly contrary to those on which the majority relies.

¶ 31. The second is that a subcontractor filed a mechanic's lien against defendant, and plaintiff will be required to pay the subcontractor out of its recovery. This reason is at best irrelevant. Indeed, it may be that none of plaintiff's recovery will go to profits or remuneration for the house construction, particularly if it is denied recovery of attorney's fees. Why this economic reality should advantage defendant is not explained in the majority opinion.

¶ 32. The exact same situation arose in *De Witt v. Liberty Leasing Co.*, 499 P.2d 599 (Alaska 1972), where the trial court tried to penalize a contractor for failing to pay a subcontractor by denying recovery of attorney's fees. The Alaska Supreme Court held that the trial court does not have the discretion to refuse an award of fees for this purpose. *Id.* at 601. The court noted that the owner's refusal to pay the contractor deprived it of the funds to pay subcontractors, bringing about the default that the owner sought to take advantage of by avoiding paying the contractor's attorney's fees. *Id.* In essence, the

majority is penalizing plaintiff because defendant failed to make a payment, a policy built on blaming the victim.

¶ 33. Citing *Young v. Northern Terminals, Inc.*, 132 Vt. 125, 130, 315 A.2d 469, 472 (1974), the majority begins with the statement that we review the trial court's ruling on attorney's fees to determine whether there is an abuse of discretion. *Young*, however, is a case about the amount of an attorney's fee award, an issue on which the trial court does have discretion. See 132 Vt. at 130, 315 A.2d at 472 ("The trial court enjoys a large measure of discretion in fixing the reasonable value of legal services."). Where the right to attorney's fees is provided in the contract, the contractor is entitled to an award as a matter of law. *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 163, 761 A.2d 688, 701-02 (2000). Plaintiff is entitled to an award as a matter of law in this case.

¶ 34. I can also find no ground to refuse to apply the prompt payment statute, 9 V.S.A. § 4007(c), which provides that "the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorneys' fees." See generally J. Hays, *Prompt Payment Acts: Recent Developments and Trends*, 22-SUM Construction Law 29, 30 (explaining that eighteen states have prompt payment statutes similar to Vermont's statute). The purpose of the prompt payment act is to provide protection to contractors and subcontractors. See *R.W. Sidley, Inc. v. United States Fid. & Guar. Co.*, 319 F. Supp. 2d 554, 560 (W.D. Pa. 2004) (decided under virtually identical Pennsylvania prompt payment act). There is no dispute that the statute applies to this action if plaintiff comes within its specific terms. We must apply it according to its plain meaning. *DJ Painting, Inc. v. Baraw Enters.*, 172 Vt. 239, 247, 776 A.2d 413, 420 (2001). By its terms, it is mandatory and accords no discretion to the court to deny fees where it applies. See *Corley v. Rivertown, Inc.*, 863 So. 2d 1244, 1246 (Fla. Dist. Ct. App. 2004) (under similar Florida statute, court must award attorney's fees when the statute applies); *John B. Conomos, Inc. v. Sun Co.*, 2003 PA Super. 310, ¶¶ 30-31, 831 A.2d 696 (under virtually identical Pennsylvania statute, court must award attorney's fees when the statute applies).

¶ 35. At the outset, I want to emphasize my main disagreement with the majority decision on the prompt payment act. Although we have differences on the statute's meaning, and the discretion it accords to the trial judge as outlined below, my central point is that whether we label the trial court's action as an abuse of discretion or an erroneous construction of the law, under any possible standard of review, we

cannot affirm the trial court's decision that plaintiff is not entitled to attorney's fees under the prompt payment act. I return to this central point after discussing other differences with the majority decision.

¶ 36. The court denied attorney's fees under the statute for the following reasons:

> There's no question that the plaintiff prevailed, because in terms of sheer dollars and cents, he came out the winner. But to say that that means that he substantially prevailed, I'm not prepared to do that. And my reason is in part that I'm embarking [sic] the equitable powers of the Court which play in the area of attorney's fees.

Although the majority recognizes that the statute is mandatory, it upholds the trial court decision as within its "exercise of discretion." The majority concludes that there was no substantially prevailing party in this case because the "jury verdict ... resulted in awards to both parties" and because part of plaintiff's recovery will go to pay off a subcontractor. *Ante,* ¶ 13.

¶ 37. The statute awards attorney's fees to "*the* substantially prevailing party," recognizing that more than one party can recover, especially in a construction contract case, but only one party can be found to have prevailed. 9 V.S.A. § 4007(c) (emphasis added). Thus, its language is consistent with the overwhelming law from around the country that in the case of offsetting verdicts, the holder of the net verdict on the main claim has prevailed. See T. Goger, Annotation, *Who Is the "Successful Party" or "Prevailing Party" for Purposes of Awarding Costs Where Both Parties Prevail on Affirmative Claims,* 66 A.L.R.3d 1115, 1119-20 (1975) (citing cases). In a leading California case, the court found that the plaintiff construction company was the "successful party" where plaintiff won a net judgment even though the defendant homeowner had prevailed on a counterclaim for faulty construction. *Moss Constr. Co. v. Wulffsohn,* 253 P.2d 483, 484-85 (Cal. Dist. Ct. App. 1953) (now superseded by statute, Cal. Civ. Proc. Code § 1032, defining prevailing party to include "the party with a net monetary recovery"). The court noted that "the party awarded the *net* judgment is the prevailing litigant and thus the *successful party.*" *Id.* at 485; accord *De Witt,* 499 P.2d at 600 (designating contractor as prevailing party even though homeowner allowed an offset and noting that trial court does not have discretion to refuse to award attorney's fees to penalize contractor for not paying subcontractor); *Distefano v. Hall,* 69 Cal. Rptr. 691, 697 (Ct. App. 1968) (naming contractor the

prevailing party and awarding attorney's fees despite offset to owner because contractor received the net recovery); *Corley*, 863 So. 2d at 1246 (entitling contractor to attorney's fees under similar Florida statute even though as a result of offset to owner net recovery was less than a fifth of the amount of the last unpaid installment due from owner); *Szoboszlay v. Glessner*, 664 P.2d 1327, 1333-34 (Kan. 1983) (under landlord and tenant statute, tenant was successful in suit for return of a security deposit, and entitled to attorney's fees, even though landlord received smaller offsetting counterclaim judgment for unpaid rent); *Schmidt v. Colonial Terrace Assocs.*, 694 P.2d 1340, 1345 (Mont. 1985) (in construction contract case, contractor was prevailing party and entitled to attorney's fees even though purchasers were awarded an offset equal to more than 50% of the amount awarded to contractor). I see no reason not to follow the decisions from other states; they are clearly consistent with the language of our statute.

¶ 38. The majority appears to have two answers to the above analysis: (1) the net offset cases do not apply because "substantially prevailed" has a different meaning from "prevailed"; and (2) an award is a matter of discretion under the statute.

¶ 39. In making the former argument, the majority has drawn largely from federal law, quoting the Supreme Court in *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983), as noting that federal fee-shifting statutes contain "varying standards" and *Union of Needletrades, Industrial & Textile Employees v. INS*, 336 F.3d 200, 208 (2d Cir. 2003), as saying that the addition of the word "substantially" goes to the amount or degree of recovery necessary to obtain a fee award. In fact, the state of the federal law is best explained in *Oil, Chemical & Atomic Workers International Union v. Department of Energy*, 288 F.3d 452, 455-56 (D.C. Cir. 2002):

> We have seen nothing to suggest that Congress sought to draw any fine distinction between "prevailing party" and "substantially prevail." The Internal Revenue Code, for instance, defines "prevailing party" to mean a party who has "substantially prevailed." . . . Consistent with our practice (and the Supreme Court's) of viewing the various fee-shifting statutes as interchangeable, we have in the past treated the "substantially prevail" language in FOIA as the functional equivalent of the "prevailing party" language found in other statutes.

See also *Loggerhead Turtle v. County Council of Volusia County*, 307 F.3d 1318, 1322 n.4 (11th Cir. 2002) (differences in language "are generally deemed inconsequential"); *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1047 (10th Cir. 1994) (party that "substantially prevails" in Clayton Act means the same as "prevailing party" in the Civil Rights Attorney Fee Act). The Second Circuit Court of Appeals endorsed these decisions in *Union of Needletrades*. 336 F.3d at 207-08.

¶ 40. Even if there is a difference between "prevailed" and "substantially prevailed," as argued by the majority, it is not clear that the former standard is easier for the person seeking fees to meet. Just as the burden for plaintiff in establishing substantial performance is lighter than the burden of showing performance generally, the burden of showing that plaintiff substantially prevailed should be lighter than prevailing. See J. Klein, *Attorney's Fees and the Clean Water Act After Buckhannon*, 9 Hastings W.-Nw. J. Envtl. L. & Pol'y 109, 114 (2003). As *Oil, Chemical & Atomic Workers International Union* points out, 26 U.S.C. § 7430(c)(4) — a section of the Internal Revenue Code authorizing award of attorney's fees to a taxpayer in certain circumstances — defines "prevailing party" as a party who "has substantially prevailed with respect to the amount in controversy." 288 F.3d at 455. The clear import of the section is that "substantially prevailing" is the easier standard to meet. See also *Manion v. Nagin*, Civ. 00-238 ADMRLE, 2004 WL 234402, at *8 (D. Minn. 2004) (interpreting Florida law).

¶ 41. The Internal Revenue Code construction is similarly employed in the Washington cases. Because of a general fee-shifting statute in that state, fully half the reported cases defining "substantially prevailing party" and "prevailing party" come from that state. The Washington rule is summarized in the leading case of *Riss v. Angel*: "In general, a prevailing party is one who receives an affirmative judgment in his or her favor. If neither wholly prevails, then the determination of who is a prevailing party depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties." 934 P.2d 669, 681 (Wash. 1997) (citation omitted). Under the Washington rule, "substantially prevailing party" represents a less rigorous standard than "prevailing party." Whether the operative language is "prevailing party" or "substantially prevailing party," I would use the net offset rule. It sets a bright line for administering an attorney's fee recovery policy.

¶ 42. The majority's second response brings me back to my primary point about the application of the prompt payment act to this case — unless we are prepared to give unlimited discretion to the trial court, the refusal to award attorney's fees in this case cannot be affirmed under any construction of the prompt payment act provision.

¶ 43. Plaintiff in this case sought the remaining contract price of $15,067. The jury verdict gave it $11,067, 73% of the requested amount. In her answer and counterclaim, defendant sought three aspects of monetary relief: (1) a defendant's verdict on plaintiff's claim so plaintiff would not recover; (2) unspecified damages to put the house into the condition promised by the construction contract; and (3) damages in the amount of $15,000 for the items that could not be repaired. There was no monetary figure attached to the second aspect of the damages, but the complaint itemized sixteen separate deficiencies that needed to be corrected, including resetting the house on the foundation. Although we cannot assign a precise percentage to the extent of defendant's counterclaim recovery in relation to her demand, it is obviously a very small percentage. Under any view of the term, and accounting for the discretion of the trial judge in applying the facts to the law, plaintiff substantially prevailed.

¶ 44. The majority argues that we should follow *Union of Needletrades*, and hold that a party has substantially prevailed only if that party has prevailed to a considerable or large degree. See 336 F.3d at 208; *In re Marriage of Murphy*, 763 N.E.2d 933, 938 (Ill. App. Ct. 2002) (defining "substantially prevail" as prevailing to a "significant" degree), *rev'd on other grounds*, 786 N.E.2d 132 (Ill. 2003). In a case the majority relies upon the contractor recovered only about a third of its claim because of offsets, obviously not meeting the requirement of a significant or considerable degree. *Bridges PBT v. Chatta*, 2003 PA Super. 122, ¶ 10, 821 A.2d 590. In contrast, the plaintiff here easily met that standard, particularly because defendant's set-off was a small portion of plaintiff's award. See *Signal Mut. Indem. Ass'n v. AK-WA Inc.*, No. 92-36603, 1993 WL 540283, at *3 (9th Cir. Dec. 30, 1993) (applying Washington law and reversing the trial court where plaintiff recovered almost 80% of the damages it sought and defendant recovered none); *In re Marriage of Murphy*, 763 N.E.2d at 939 (to "substantially prevail" party must "obtain at least 50% of the relief she seeks"). Further, regardless of what degree is required, a party need not recover all of its claimed relief in order to substantially prevail. *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 677 P.2d 773, 774 (Wash. Ct. App. 1984).

¶ 45. Although the majority endorsed *Union of Needletrades* for its holding that the court must look to the degree of recovery, neither the trial court nor the majority actually applied this standard. The trial court apparently believed that once it found that plaintiff did not recover 100% of its damages it had the "equitable powers" to deny attorney's fees. The majority does not address the substance of the trial court decision; instead it discusses the equitable powers of the trial court. Apparently, it believes that general powers of equity can trump both a contractual and statutory right to fees. I agree that equity can in some circumstances create an additional power to award fees, see *DJ Painting, Inc.*, 172 Vt. at 246, 776 A.2d at 419, but we have never held that equity can override a right to attorney's fees granted by statute or by a contractual term.

¶ 46. The result of the majority decision is that the trial court will have unlimited discretion to deny fees if a contractor recovers anything short of 100% of its claims. In essence, the majority has rewritten the entitlement of the statute into a mere authorization. The Legislature could have written the statute to authorize an award of fees, rather than to contain a command. Under such a statute, the trial court would have had exactly the authority it claimed here. See *Gold Kist, Inc. v. Williams*, 332 S.E.2d 22, 24 (Ga. Ct. App. 1985) (noting that, under Georgia law, trial court has discretion in assessing costs). The exercise of discretion under our statute is inconsistent with its plain meaning.

¶ 47. I have a similar view of the trial court's action with respect to plaintiff's interest claim. Plaintiff claimed interest on the judgment at 24%, the rate stipulated in the contract. The trial court ruled that the contract rate was inapplicable because the case "went to trial" and instead used the statutory rate of 12%, suggesting that the contract rate would be usurious. The majority upholds the decision on a different rationale, namely, that the jury found that defendant's refusal to pay the last installment was done in good faith. The majority also relies on 9 V.S.A. § 4002(d) that provides for interest at the rate set in 12 V.S.A. § 2903(b) "except as otherwise agreed."

¶ 48. Neither the rationale of the trial court nor that of the majority is sustainable. As discussed above, the jury did not find that defendant withheld the $15,067 installment payment in good faith, and its finding that plaintiff substantially complied with its contractual obligations enables plaintiff to enforce the contract. The prompt payment act provision, 9 V.S.A. § 4002(d), does not help defendant because it explicitly applies only if the parties have not "otherwise agreed," and

they otherwise agreed in the contract before us. Furthermore, the interest on default provision does not violate the usury statute. The usury statute sets "the rate of interest or the sum allowed for forbearance or use of money [at] twelve percent per annum." 9 V.S.A. § 41a(a). Under *Lowell & Austin, Inc. v. Truax*, 146 Vt. 448, 452-53, 507 A.2d 949, 951 (1985), the default provision does not violate the statute because it does not involve a loan or forbearance. See *Southwest Concrete Prods. v. Gosh Constr. Corp.*, 798 P.2d 1247, 1251-52 (Cal. 1990) (distinguishing late charges from loan or forbearance); R.A. Lord, Williston on Contracts § 20:34 (4th ed. 1999) (explaining that late charges for a loan on default does not make a transaction usurious).

¶ 49. Although the default provision is not usurious, it is a form of liquidated damages that may involve an illegal penalty. See *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 316, 597 A.2d 1280, 1282 (1991) (outlining test for determining if contract provision is a reasonable liquidated damages clause or illegal penalty). I agree that the rate is suspect in the current low interest rate environment. We held in *Highgate*, however, that the trial court must examine whether the creditor is seeking an unenforceable penalty under three criteria, and our standard of review of its conclusion is limited. *Id.* at 315-16, 597 A.2d at 1281-82. The trial court has not conducted the necessary analysis, and our limited standard of review prevents us from doing so in the first instance here. I would remand for the analysis specified in *Highgate*.

¶ 50. In many cases, courts are required to reach a fair result, based on an approximation of where the equities lie. This is not such a case. Our preexisting contract law mandates that plaintiff be awarded attorney's fees in this case; the Legislature has reinforced this law by stepping in to protect construction contractors in situations where owners fail to pay for work done by allowing the contractor to recover attorney's fees incurred in pursuing a valid claim. The policy question of what is fair has been determined by the Legislature and settled by contract law, and we have no discretion to avoid this clear law. I dissent and am authorized to state that Justice Gibson joins this dissent.