2004 VT 82

# In re Petition of Adelphia Business Solutions of Vermont, Inc.
# (Verizon New England Inc., Appellant)

[861 A.2d 1078]

No. 03-397

Present: Amestoy, C.J.,[1] Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed August 20, 2004

*Peter H. Zamore* of *Sheehey Furlong & Behm P.C.*, Burlington, and *Bruce P. Beausejour*, Boston, Massachusetts, for Appellant Verizon New England Inc.

---

[1] Chief Justice Amestoy was present for oral argument but did not participate in the decision.

*John H. Marshall* and *Robert A. Miller, Jr.* of *Downs Rachlin Martin PLLC*, St. Johnsbury, for Appellee Adelphia Business Solutions, Inc.

*Aaron D. Adler*, Montpelier, for Appellee Department of Public Service.

¶ 1. **Skoglund, J.** Verizon New England Inc. d/b/a Verizon Vermont appeals from an order of the Public Service Board (PSB) in a dispute over the interpretation of two contracts. The PSB concluded that the two contracts, known as interconnection agreements, required Verizon to pay a competing local exchange carrier (CLEC) for calls made by Verizon customers to the competing carrier's customers within the same local calling area, including calls to internet service providers. Verizon challenges that interpretation of the parties' agreements, and we now affirm.

¶ 2. The simplicity of dialing a seven-digit telephone number to make a local call is belied by the complexity of wires and switches comprising the network that makes the call possible. For our purposes, it is enough to break down a telephone call from the carrier's perspective into three basic steps: the calling party's carrier originates and transmits the call and the called party's carrier terminates the call. Carrier interconnection agreements govern the compensation carriers pay each other for terminating local calls made between their customers. Carriers may agree to charge their end users for the costs of call termination (bill and keep), or they may agree to recover their costs from each other (reciprocal compensation).

¶ 3. Verizon and Telcove[2] entered into two interconnection agreements, one in 1996 and the other in 1999. Among other things, the parties agreed to compensate one another on a per-minute basis for local calls made between their customers. In contrast to the 1996 contract, the parties formed the 1999 agreement through Telcove's adoption of Verizon's agreement with another CLEC, an option made available to Telcove and other CLECs by the Telecommunications Act of 1996. See 47 U.S.C.A. § 252(i) (West 2001) (allowing CLECs to adopt interconnection agreements entered into by incumbent carrier and other CLECs). In the 1999 agreement, Verizon inserted an additional provision not present in the underlying agreement Telcove

---

[2] Telcove is the name under which petitioners Adelphia Business Solutions of Vermont, Inc. and Adelphia Business Solutions, Inc. operate.

adopted. The additional provision stated Verizon's disagreement that calls terminated to internet service providers (ISPs) are local when made to numbers within a designated local calling area. In other respects, the two agreements contain identical provisions on reciprocal compensation for local traffic.[3]

¶ 4. The present dispute arose after Verizon withheld approximately $25 million in reciprocal compensation payments from Telcove. Telcove has its own network facilities and serves approximately 900 customers in Vermont. A small number of those customers are ISPs. Carriers with ISP customers generally terminate a higher proportion of calls than carriers with few or no ISP customers because ISPs receive more calls than they make. See *MCI WorldCom Communications, Inc. v. Dep't of Telecomms. & Energy*, 810 N.E.2d 802, 805-06 (Mass. 2004). That trend can result in asymmetrical compensation payments for terminating local traffic. *Id.* Until 1999, Verizon paid reciprocal compensation to Telcove for local ISP-bound calls made by Verizon customers. In 1999, Verizon began objecting to the charges, claiming that the calls were not local because they terminated at some place on the internet beyond Telcove's network.

¶ 5. In October 2001, Telcove sought PSB intervention into the parties' dispute. Telcove asked the PSB to order Verizon to compensate Telcove for local calls made by Verizon customers to Telcove's ISP customers. Telcove argued that the calls were local calls because they terminated on Telcove's facilities. Verizon responded that calls made to ISPs were not local and therefore they were not subject to reciprocal compensation; that the agreements reveal an intent to track federal law, which considers calls to ISPs to be long-distance calls; and that the 1999 agreement on reciprocal compensation was not enforceable because the parties disagreed on an essential term — whether ISP-bound traffic was local.

¶ 6. A hearing officer took evidence on Telcove's petition and issued a proposed decision, which the PSB ultimately adopted. The PSB concluded that calls to Telcove's ISP customers were local and were subject to the compensation obligations in the interconnection agreements before it. The PSB found that Verizon's network facilities cannot distinguish between telephone calls made to Telcove's ISP customers within the same local calling area and similar calls to its non-ISP customers. The PSB explained:

---

[3] Both agreements provide in relevant part: "The Parties shall compensate each other for transport and termination of Local Traffic in an equal and symmetrical manner at the rate provided in the Pricing Schedule."

A call to an ISP is virtually the same as other calls completed to a customer located in the same exchange. The telecommunications network and underlying function used to transport and terminate the ISP-bound and other calls are the same. They use the same facilities as well. The only difference is that, in the case of calls to ISPs, the ISP then transmits a digital signal to the Internet. Moreover, the telecommunications network itself treats the call as terminated at the time it reaches the ISP. A call record is generated at that point and answer supervision (which indicates the successful completion of a call) is returned. At this point, the network treats the call as completed, even though the ISP directs the electronic transmission to the Internet.

The PSB found that Verizon's network limitation required the company to bill its retail customers for all local calls — whether bound for an ISP or not — in accordance with Verizon's tariff for local service. The PSB rejected Verizon's arguments that the parties intended to track federal law on the compensability of ISP-bound local traffic. With approximately $25 million at stake, Verizon appealed the PSB's decision here.

¶ 7. This Court reviews PSB orders with deference to its informed judgment and expertise in telecommunications regulation. *In re Verizon New England Inc.*, 173 Vt. 327, 334-35, 795 A.2d 1196, 1202 (2002); *In re New England Tel. & Tel. Co.*, 172 Vt. 405, 408, 779 A.2d 693, 696 (2001). The Court applies a "strong presumption of validity to board orders and will accept its conclusions and findings unless they are clearly erroneous." *Verizon New England*, 173 Vt. at 334, 795 A.2d at 1202; see also 30 V.S.A. § 11(b) (on appeal to Supreme Court, PSB findings "shall be accepted unless clearly erroneous"). The burden of demonstrating clear error is the appellant's, and that burden is not a light one. See *In re East Georgia Cogeneration Ltd. P'ship*, 158 Vt. 525, 532, 614 A.2d 799, 803 (1992). We must have "the definite and firm conviction that a mistake has been committed [before we] will . . . hold a finding to be clearly erroneous." *In re Vt. Elec. Power Co.*, 131 Vt. 427, 432, 306 A.2d 687, 690 (1973). Finally, we interpret contracts to give effect to the parties' intent, which we presume is reflected in the contract's language when that language is clear. *In re Verderber*, 173 Vt. 612, 615, 795 A.2d 1157, 1161 (2002) (mem.).

¶ 8. Verizon makes several arguments on appeal, but none of them demonstrates reversible error. The company first raises two complaints with the PSB's consideration of Verizon's retail practices when ascertaining the parties' intent on reciprocal compensation. Verizon contends that the PSB should not have admitted or relied upon extrinsic evidence of Verizon's retail practices. Telcove claims that Verizon waived the question of admissibility by not raising it before the PSB. We agree. Verizon did not object to the admission of any extrinsic evidence although it was required to do so before trial under the PSB's procedural rules.[4] See PSB Rule 2.216(C), 8 Code of Vermont Rules 30 000 001-25 (1999) ("Objections to the admissibility of prefiled testimony or exhibits shall be filed in writing not more than thirty days after such evidence has been prefiled or five days before the date on which such evidence is to be offered, whichever is earlier."). Nor did the company otherwise raise the argument before the PSB so that it could consider the alleged error and rule on it. Verizon's previous silence on this matter therefore forecloses review of this claim on appeal. See *In re Vt. Yankee Nuclear Power Station*, 2003 VT 53, ¶ 13, 175 Vt. 368, 829 A.2d 1284.

¶ 9. Admissibility of extrinsic evidence aside, Verizon argues that the PSB should not have looked to its retail billing practices to determine whether an ISP-bound call is local because the contract does not define "local traffic" by reference to retail practices. The 1996 agreement defines "local traffic" as "a call which is originated and terminated within a local calling area, as defined in P.S.B. VT No. 20 Tariff,[5] effective at the time this agreement is signed."[6] That definition is consistent with the company's retail practice of rating calls as local if they originate and terminate within a defined local calling area. As the PSB noted, the parties would have understood that "a call is considered to be terminated when it is handed off at the terminating carrier's switch and delivered to the called party's premises, establishing a connection with the called party, with answer supervision returned and a call record generated." Absent some manifest intent to apply a

---

[4] The only written objections to the parties' prefiled testimony and exhibits came from the Department of Public Service.

[5] Verizon's Tariff No. 20 governs the terms, conditions, and rates for local exchange service in Vermont.

[6] The wording of the same provision in the 1999 agreement varies from the wording in the 1996 agreement, but no party has claimed that the provisions differ in any material respect.

different meaning to the technical term "termination," the technical meaning must be given effect. Restatement (Second) of Contracts § 202(3)(b) (1981). Therefore, even assuming the PSB erred by considering Verizon's retail practices, the error was harmless and does not warrant reversal of the PSB's order. See PSB Rule 2.220, 8 Code of Vermont Rules 30 000 001-26 (adopting V.R.C.P. 61); V.R.C.P. 61 (harmless errors are not grounds for reversal).

¶ 10. To the extent Verizon's argument assumes a termination point outside of Telcove's network facilities, the argument is unavailing. The dispositive factual question before the PSB was whether calls to Telcove's ISPs terminate on Telcove facilities or somewhere outside Telcove's network. The PSB found that ISP-bound calls terminate on Telcove's facilities and not on the world-wide web at some unknown far away location. Therefore, any calls to an ISP made from a number within the same local calling area is a local and compensable call under the parties' 1996 and 1999 interconnection agreements.

¶ 11. Verizon challenges the PSB's finding on the termination point of ISP-bound calls by recounting certain evidence it offered to prove its position. The PSB considered and rejected that evidence, however, which is its prerogative as trier of fact. *In re Green Mountain Power Corp.*, 142 Vt. 373, 381, 455 A.2d 823, 826 (1983). Moreover, we do not second guess the PSB's determinations on evidentiary weight and credibility. *Id.* Verizon's recitation of evidence does not demonstrate clear error in the PSB's fact findings, which have support in the evidentiary record. See *In re Green Mountain Power Corp.*, 131 Vt. 284, 305, 305 A.2d 571, 584 (1973).

■ ¶ 12. Verizon claims that the parties intended their agreements to track federal law on reciprocal compensation for calls to ISPs, and that federal law excludes ISP-bound calls from the reciprocal compensation obligation. Verizon cites the agreements' definition of "reciprocal compensation," which references federal law: "Reciprocal compensation" is "as described in or required by the Act and as from time to time interpreted in the duly authorized rules and regulations of the FCC or the Board." Like the PSB, we do not find that provision controlling. The sections setting forth the parties' agreement to pay reciprocal compensation do not themselves refer to federal law. Rather, those provisions require reciprocal compensation for all "local traffic":

> 5.7.1 *Reciprocal Compensation only applies to the transport and termination of Local Traffic* billable by [Verizon] or [Telcove] which a Telephone Exchange Service Customer originates on [Verizon]'s or [Telcove]'s network for termination on the other Party's network except as provided in Section 5.7.6 below.

> 5.7.2 *The Parties shall compensate each other for transport and termination of Local Traffic in an equal and symmetrical manner at the rate provided in the Pricing Schedule.*

As we explained above, "local traffic" is defined as "a call which is originated and terminated within a local calling area, as defined in P.S.B. VT No. 20 Tariff, effective at the time this agreement is signed." The contract language plainly shows an intent to require reciprocal compensation payments for calls with originating and terminating points within the same local calling area. Nothing in the above language suggests the parties meant that evolving federal standards could alter the specifics of the agreement they reached.

¶ 13. The company also cites other examples of contractual provisions defined by reference to federal law. Those other terms — "interconnection," "interim telecommunications number portability," and "technically feasible point" — are not specifically related to reciprocal compensation, however, and Verizon has not explained why those terms are indicative of the parties' contractual intent on reciprocal compensation. The PSB has expertise in this area, and it did not find those terms relevant to its determination. And, as a matter of contract law, those references offer little assistance. Alone, a statutory reference is not enough to demonstrate a contractual intent to incorporate the statutory regimen and related decisional law into the contract. See *Milton Bd. of Sch. Dirs. v. Milton Staff Ass'n*, 163 Vt. 240, 243-44, 656 A.2d 993, 995 (1995) (reference to governing statute not enough to demonstrate an intent to "contractualize" statute and interpretative authority). The definitions Verizon cites therefore do not cast doubt on the PSB's interpretation of the parties' agreement on reciprocal compensation for local traffic.

¶ 14. We observe that the PSB was also mindful of the regulatory landscape at the time the parties entered the 1996 interconnection agreement. At that time, the Federal Communications Commission (FCC) had not yet established a clear position on whether calls originating within the same local calling area as the ISP to which the call is directed were local or long-distance calls. See *MCI WorldCom,*

810 N.E.2d at 807. The PSB noted the FCC's 1999 decision acknowledging its longstanding policy of treating these calls as local. See *In re Implementation of the Local Competition Provisions in the Telecomm. Act of 1996*, 14 F.C.C.R. 3689, 3703-04, ¶ 24 (1999). In addition, the PSB found that the industry would have understood that "termination" of a local call would occur once the terminating carrier's switch received the call and delivered it to the called party's premises.

¶ 15. We also reject Verizon's suggestion that we adopt the reasoning of other jurisdictions that have interpreted similar interconnection agreements in a manner consistent with Verizon's position. For example, the Massachusetts Supreme Judicial Court recently upheld a decision by the Massachusetts Department of Telecommunications and Energy (DTE) that interpreted an interconnection agreement similar to those at issue here. See *MCI WorldCom*, 810 N.E.2d at 806. The court affirmed DTE's conclusion that the contracting parties intended to incorporate federal reciprocal compensation requirements into their agreement, deferring to DTE's reliance on references to federal law that are similar to those here. *Id.* at 810-11. We are not persuaded by the court's reasoning, however, because it placed more emphasis on the general references to federal law than on the specific provisions in the contracts setting forth the reciprocal payment obligation. It is a basic tenet of contract interpretation that specific terms are given greater weight than are general terms. Restatement (Second) of Contracts § 203(c). The Massachusetts court's decision does not consider that principle. On the other hand, the PSB's order gives full effect to the more specific contract provisions defining "local traffic" and detailing the parties' mutual compensation for such traffic. The PSB's order is well reasoned and well supported.

¶ 16. Verizon raises a separate challenge to the 1999 agreement in light of the provision setting forth the company's disagreement that ISP-bound calls within a local calling area are compensable as local calls. Verizon asserts that the statement reflected a failure of the parties to agree to compensate each other for local calls made to ISPs. We do not agree. As a matter of federal law, Verizon had to offer Telcove the same terms and conditions for interconnection and reciprocal compensation that the company offered to other carriers. See 47 U.S.C.A. § 252(i). The parties could agree to modify those terms, but Verizon could not do so unilaterally as the PSB pointed out. The statement of disagreement was, at most, an acknowledgment that Verizon was unhappy with the applicability of the reciprocal compen-

sation agreement to internet traffic. Verizon entered into the agreement under the terms as herein discussed. The statement in the 1999 agreement was ineffective, therefore, to change the material terms of the underlying contract Telcove adopted in accordance with § 252(i).

¶ 17. Finally, Verizon asks us to remand this matter to the PSB so that it can consider the compensability of telephone calls known in the industry as "VNXX" calls. Calls to a VNXX number allow a consumer to dial a local telephone number and pay the local rate even though the call may be transmitted to and terminated in a physical location outside of the local calling area. At oral argument, Telcove explained that some portion of the $25 million in reciprocal compensation payments Verizon withheld represent charges for VNXX calls. The PSB did not rule on Verizon's argument concerning VNXX traffic because it believed that the company had not fairly raised it before the hearing officer. The hearing officer did not address it, and the PSB determined that it did not have an adequate record to do so. Because the issue was not properly presented to the PSB, there is no issue outstanding for us to remand and for the PSB to decide. Accordingly, Verizon's request for remand is denied, and the PSB's order is affirmed.

*Affirmed.*

