932 A.2d 1045 (2007)
2007 VT 70
HARSCH PROPERTIES, INC. d/b/a Harsch Associates
v.
Robert NICHOLAS and Deborah Nicholas.
No. 05-494.
Supreme Court of Vermont.
July 27, 2007.
*1047 Donald W. Goodrich of Donovan & O'Connor, LLP, Bennington, for Plaintiff-Appellee/Cross-Appellant.
David J. Williams of Sleigh & Williams, St. Johnsbury, for Defendants-Appellants.
Present: REIBER, C.J., DOOLEY, JOHNSON and SKOGLUND, JJ., and REISS, D.J., Specially Assigned.
¶ 1. REIBER, C.J.
Homeowners, Robert and Deborah Nicholas, appeal the superior court's order awarding their real estate broker, Harsch Properties, Inc., attorney's fees and costs following a jury verdict that found owners breached the implied covenant of good faith and fair dealing and awarded broker $4000. On appeal, owners argue that broker was not the prevailing party within the meaning of the contract and thus not entitled to fees. Broker also appeals and argues that the trial court erred in denying its motion for additur or a new trial because the jury's award of $4000 was unsupported by the evidence. We affirm.
¶ 2. In May 2001, owners entered into a listing agreement with broker, giving broker the exclusive right to sell their 100-acre property in Pownal, Vermont for one year.[1] The agreement excluded a one-acre plot with a mobile home. The listing agreement set a firm $600,000 asking price and established a brokerage fee of 8%. The agreement required owners to "at all times conduct discussions/negotiations with respect to offers, contracts, addenda, extensions, etc., directly through the Broker(s)." In addition, the agreement explained that broker's full fee would be due if owners defaulted or if owners declined to accept "a non-contingent full price offer with a reasonable closing period." In the case of a disagreement, the agreement established: "If the Broker is forced by collection or litigation effort to enforce the terms and conditions of this agreement, then the prevailing party will be entitled to reimbursement for all costs of collection, including attorney's fees."
¶ 3. During the listing period, broker negotiated with two potential buyers. In March 2002, a couple viewed the property and became interested in purchasing it. In June 2002, with broker's assistance, they drafted a proposed purchase and sale agreement. The proposal offered $675,000 for the property, including the one-acre lot and mobile home excluded in the listing agreement. It required owners to hold a mortgage for part of the purchase price and contained contingencies for an inspection and a percolation test. The parties disagree as to whether broker discussed *1048 this proposal with owners. In any event, the first couple did not submit this proposal to owners as a formal offer.
¶ 4. In August 2002, a second couple became interested in the property and submitted a full-price cash offer for $600,000 to owners. The offer was contingent on an inspection and a percolation test, excluded the one-acre plot, and asked owners to obtain a permit to subdivide the lot. The offer set a closing date of May 15, 2003. Owners rejected the offer immediately after broker submitted it to them. At trial, owners testified that they rejected the offer because it contained unacceptable contingencies, and had a delayed closing date. Broker testified that owners rejected the offer because they liked the first potential buyers and wished to sell to them only.
¶ 5. In September 2002, communication between broker and owners deteriorated and, with broker's approval, an attorney took over negotiations between owners and the first potential buyers. Broker testified that he suspected that owners were also negotiating directly with the first couple, although both owners and prospective buyers denied it. In November 2002, the first couple submitted an offer for $675,000. The offer included the one-acre lot, proposed a mortgage to be financed through owners, and contained no contingency for an inspection or percolation test. The offer stipulated that owners would pay broker his commission. Owners rejected the offer as containing too many contingencies. Broker attempted to resolve the differences between owners and the prospective buyers, but ultimately, owners did not accept an offer for the property.
¶ 6. On June 20, 2003, broker filed a complaint against owners seeking damages for breach of contract and breach of the implied covenant of good faith and fair dealing. In his complaint, broker alleged that owners breached the listing agreement by negotiating directly with the first potential buyers and by rejecting the second potential buyers' offer because they wanted to sell the property to the first couple. Owners denied negotiating directly with the prospective buyers and maintained that they were justified in rejecting the offer because it contained unacceptable contingencies.
¶ 7. The court held a four-day jury trial. At the close of evidence, the court instructed the jury on the two claims. Concerning the breach of contract claim, the court explained that the jury should decide whether owners' conduct failed to comply with the terms of the contract or whether owners made clear that they had no intention of performing under the contract. To find a breach of the covenant of good faith and fair dealing, the court charged the jury to decide whether owners had "violated community standards of decency, fairness or reasonableness." Finally, regarding damages, the court instructed:
if you have found that [owners] breached their contract with [broker], you should award him the commission he would have earned had the breach not occurred. If you find that [owners] have violated the covenant of good faith and fair dealing, you should award damages to [broker]. The appropriate amount of damages in that instance is the amount that you believe would compensate [broker] for the value of the lost opportunity to effect a sale and thereby receive compensation under the contract.
Neither party objected to the jury instructions.
¶ 8. In a special form, the jury found owners had not breached the contract, but found owners had breached the implied covenant of good faith and fair dealing and awarded broker $4000. Following the *1049 jury's verdict, broker filed a motion for a new trial or additur on the issue of damages, arguing that there was no support for the jury's $4000 award because the sole measure of damages was broker's brokerage fee, a minimum of $30,000.[2] Broker also asked the superior court to award it attorney's fees as the prevailing party under the contract. Owners objected to broker's request for a new trial and for attorney's fees. Owners argued that broker had not prevailed on a term of the contract and thus was not entitled to fees. In addition, owners filed their own motion for attorney's fees.
¶ 9. The superior court denied the motion for a new trial or additur. The court explained that its instructions to the jury did not direct it to award an amount equal to broker's commission for the breach of the covenant of good faith and fair dealing. The instructions asked the jury to award damages for the lost opportunity to complete a sale. The court concluded that there was no evidence that the jury disregarded the court's instructions or that the award was a result of prejudice.
¶ 10. The court also concluded that broker was entitled to fees as the prevailing party. The court acknowledged that the covenant of good faith and fair dealing was not an express term of the parties' contract. The court reasoned, however, that the covenant was an implied term, and thus broker could recover attorney's fees for its breach. In addition, the court rejected owners' argument that they were the prevailing party under the contract and denied owners' request for attorney's fees.

I.
¶ 11. On appeal, owners contend that the trial court erred in determining that broker was entitled to fees pursuant to the contract. In general, we follow the American rule that each party is responsible for its own attorney's fees. DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 246, 776 A.2d 413, 419 (2001). Attorney's fees may be awarded, however, when provided for by statute or in a contract between the parties. Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 5, 178 Vt. 77, 872 A.2d 292; see Ianelli v. Standish, 156 Vt. 386, 389, 592 A.2d 901, 903 (1991) (granting fees due under a contract to the prevailing party as a matter of law).
¶ 12. In this case, the listing agreement stipulated that if broker had to litigate "to enforce the terms and conditions of this agreement, then the prevailing party will be entitled to reimbursement for all costs of collection, including attorney's fees." We construe the meaning of this provision by examining the plain meaning of the language without resort to extrinsic evidence. In re Adelphia Bus. Solutions of Vt., Inc., 2004 VT 82, ¶ 7, 177 Vt. 136, 861 A.2d 1078 ("[W]e interpret contracts to give effect to the parties' intent, which we presume is reflected in the contract's language when that language is clear."). We do so keeping in mind that "[w]hen a contract provides for attorney's fees, Vermont courts are loath to revise the agreement struck by the parties and deny them the benefit of their bargain." Fletcher Hill, Inc., 2005 VT 1, ¶ 5, 178 Vt. 77, 872 A.2d 292.
¶ 13. Owners contend that the implied covenant of good faith and fair dealing is not a term of the contract and therefore broker is not entitled to fees for its breach. Owners further argue that because the jury found for them on the breach of contract *1050 claim, they are entitled to fees as the prevailing party. We affirm the trial court's ruling that broker was the prevailing party within the meaning of the contract.
¶ 14. The covenant of good faith and fair dealing is implied in every contract; its boundaries, however, are contextual and fact-specific. Carmichael v. Adirondack Bottled Gas Corp., 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993). It is an implied promise that protects against conduct which violates community standards of "`decency, fairness or reasonableness.'" Id. at 209, 635 A.2d at 1216 (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). "A cause of action for breach of the covenant of good faith can arise only upon a showing that there is an underlying contractual relationship between the parties. . . ." Monahan v. GMAC Mort. Corp., 2005 VT 110, ¶ 54 n. 5, 179 Vt. 167, 893 A.2d 298. A breach for violation of the implied covenant may form a separate cause of action than for breach of contract, as long as the counts are based on different conduct. See id.
¶ 15. Owners contend that broker was not entitled to fees because the implied covenant was not a "term" of the parties' contract. Owners base their argument on language in Carmichael, in which we explained that although a covenant of good faith is implied in every contract, "an action for its breach is really no different from a tort action, because the duty of good faith is imposed by law and is not a contractual term that the parties are free to bargain in or out as they see fit." 161 Vt. at 208, 635 A.2d at 1216. Owners focus on the language that the implied covenant of good faith is not a contractual term and argue that they did not breach a "term or condition" of the listing agreement and therefore broker cannot recover fees. Owners further contend that Carmichael categorized all contractual good faith claims as tort actions, a concept they argue was reinforced in Monahan, where we explained that a "cause of action for the breach of the implied covenant of good faith and fair dealing is one sounding in tort." Monahan, 2005 VT 110, ¶ 54 n. 5, 179 Vt. 167, 893 A.2d 298.
¶ 16. We disagree with owners' interpretation of our prior case law. Because the implied covenant is fact-specific, broad principles cannot be extrapolated from specific decisions without carefully examining the factual context. Owners contend that Carmichael specifically states that the implied duty is not a term of contract; however, this is a misstatement of the case. In Carmichael. we addressed the question of whether the trial court properly instructed the jury on the duties the parties owed one another under their contract. The defendant argued that the court "created substantive duties that the parties had not bargained for in their original contract." 161 Vt. at 210, 635 A.2d at 1217. We held that the duties outlined in the court's instruction arose by "the implication of fair dealing and good faith." Id. It was in this factual context in which we observed that the implied covenant "is not a contractual term that the parties are free to bargain in or out as they see fit." Id. at 208, 635 A.2d at 1216 (emphasis added). The emphasis of the case was on the latter part of the statement  that the parties could not bargain the covenant out of the contract  not on the broad statement owners would have us adopt.
¶ 17. Owners' reliance on Monahan for the proposition that claims for breach of the implied covenant are torts, not contractual claims, is similarly unavailing. In Monahan, we addressed the question of what standard applied for awarding punitive damages for breach of the implied covenant. The defendant argued that a *1051 party seeking punitive damages for breach of the covenant of good faith and fair dealing should satisfy the requirement in contract cases that the breaching party's actions were willful and wanton. We disagreed and concluded that "punitive damages are available in tort actions for breach of the implied covenant of good faith if, as with all other tort actions, the plaintiff can show that the defendant's conduct demonstrates actual malice." 2005 VT 110, ¶ 54 n. 5, 179 Vt. 167, 893 A.2d 298. This decision was limited to establishing the standard for granting punitive damages in tort actions for a breach of good faith. Although claims for breach of the implied covenant take on many qualities of a tort action, these claims are not fully and exclusively torts. The implied covenant arises out of a contractual relationship between the parties, id., and creates duties under the contract, see Carmichael, 161 Vt. at 209-10, 635 A.2d at 1216-17.
¶ 18. Thus, although breach of the implied covenant may create an action in tort, the covenant arises from the contract and exists because of the contract. We decline to adopt owners' reasoning that broker could not recover fees because the listing agreement did not contain an express term requiring the parties to act in good faith. The covenant of good faith and fair dealing was an implied term, which required the parties "not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement." Carmichael, 161 Vt. at 208, 635 A.2d at 1216. To deny broker attorney's fees because the jury found owners breached an implied, rather than express, term of the contract would undermine the entire purpose behind recognizing an implied covenant of good faith. Owners had an obligation under the contract to act in good faith, and the jury found that they breached this obligation.
¶ 19. Having concluded that broker's claim for breach of the implied covenant of good faith and fair dealing was an effort "to enforce the terms and conditions" of the listing agreement, we turn to the question of who was the prevailing party in the action. The jury found for owners on the breach of contract claim and for broker on the implied covenant claim. The trial court determined that broker was the "substantially prevailing party" because broker prevailed on one of his claims and received a monetary award. Owners argue that they were the prevailing party because the jury found for them on the only claim arising under the contract, the breach of contract claim, and thus they should be awarded fees. Owners also contend that the trial court erred in assessing their claim under the heightened standard of "substantially prevailing party." See Fletcher Hill, Inc., 2005 VT 1, ¶¶ 13, 16, 178 Vt. 77, 872 A.2d 292 (construing statutory provision awarding attorney's fees to the substantially prevailing party and noting that "substantially" alters the degree of recovery necessary to obtain fees).
¶ 20. Although we agree that the trial court erroneously referred to broker as the "substantially prevailing party," rather than the prevailing party  the standard incorporated in the contract  we find this error harmless. As discussed above, both of broker's claims arose under the contract. Therefore, in assessing which party prevailed, the trial court properly considered the entire jury verdict. Given that owners made no claims and broker received an award on one of his claims, we conclude that the trial court did not err in finding that broker was the "prevailing party" within the meaning of the contract.

*1052 II.
¶ 21. Next, we address broker's request for a new trial or additur. Broker argues that the jury's $4000 award is inadequate and unsupported by the evidence. The trial court has discretion in assessing a motion for a new trial, and we will not reverse without a showing that the court abused this discretion. Hoague v. Cota, 140 Vt. 588, 591, 442 A.2d 1282, 1283 (1982). An inadequate damage award is grounds for a new trial, id., but "[a] new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court deems to be reasonable." V.R.C.P. 59(a). When damages are not disclosed in a contract or are not exactly ascertainable, the award must be "grossly insufficient" to justify interference. Cenate v. Hunter, 115 Vt. 402, 404, 62 A.2d 645, 646 (1948). "If it can be justified upon any reasonable view of the evidence, considered in the light most favorable for the defendant, the ruling must stand." Id.
¶ 22. Broker contends the court abused its discretion in denying a new trial or additur because the jury misconstrued the court's instruction and there was no evidence to support the damage award. According to broker, the jury had only two choices in this case: to find for owners and award broker no damages, or to find for broker and award his brokerage fee. Broker characterizes the damages as liquidated because his fee was stipulated in the contract. Because the jury's award of $4000 is significantly less than his brokerage fee  a minimum of $30,000  broker argues that there was no rational basis for the jury's award.
¶ 23. The trial court did not abuse its discretion in denying broker's request for a new trial or additur. As the trial court pointed out, its instructions to the jury on how to assess damages differed between the contract claim and the implied covenant claim. The court instructed the jury that if it found owners had breached the contract then it must award "the commission [broker] would have earned had the breach not occurred." In contrast, the court charged the jury to award broker "the value of the lost opportunity to effect a sale" if it found owners had breached the implied covenant of good faith. The court characterized the damages due for breach of the implied covenant as unliquidated because the lost opportunity cost was not specified in the contract. The court noted that the parties presented very little evidence at trial as to what broker's actual costs were in listing and showing the property and consequently the jury was faced with a "difficult task." The court concluded that the jury followed its instructions and found no basis to interfere with the resulting verdict.
¶ 24. Considering the evidence in the light most favorable to owners, we conclude that the court did not abuse its discretion in denying broker's request for additur or a new trial. We disagree with broker that the court's instructions required the jury to award broker his commission upon a finding that owners breached the implied covenant of good faith. The trial court instructed the jury "to award damages for the lost opportunity to effect a sale." This amount was undefined in the contract and supported by little evidence at trial. Under these circumstances, we agree that the jury's award was not so "grossly insufficient" as to require additur or a new trial.
Affirmed.
NOTES
[1] The parties later extended the contract until November 18, 2002.
[2] Broker argues that according to the evidence presented at trial he was due either 5% or 8% of the firm $600,000 sale price. Thus, broker asks for $30,000 or $48,000.