*Khamnei v. South Dakota Dev. Corp.*, No. 963-11-16 Cncv (Mello, J., Oct. 5, 2017).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| CHRIS C. KHAMNEI,<br> Plaintiff<br><br>v.<br><br>SOUTH DAKOTA DEVELOPMENT CORP.,<br> Defendant | Docket No. 963-11-16 Cncv |

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION TO AMEND COMPLAINT

In this declaratory judgment and breach of contract action, Plaintiff Chris C. Khamnei, the purchaser of real property at a foreclosure auction, alleges that the seller, Defendant South Dakota Development Corporation ("South Dakota"), was responsible for paying $8,004.16 in property taxes that accrued after the auction and before the closing, which it failed to pay. South Dakota moves for summary judgment on the basis that the contract unambiguously obligated Khamnei to pay those taxes. Khamnei moves to amend his complaint to add a claim for consumer fraud. Finally, South Dakota seeks attorney's fees for defending against this action pursuant to a contractual provision. Khamnei is pro se. Alexandra E. Edelman, Esq. represents South Dakota.

Preliminarily, the court must address a procedural matter with respect to Khamnei's May 8, 2017 filings, which requires some brief background. South Dakota's motion for summary judgment was filed on March 15, 2017. On March 28, Khamnei moved for additional time to respond. On April 18, 2017, the court ordered that Khamnei would have until May 8 to file his opposition to South Dakota's motion for summary judgment. On April 13, Khamnei received news from overseas that his father had passed away and, due to travel obligations, was forced to quickly file his opposition and neglected to file a response to South Dakota's statement of undisputed material facts. South Dakota filed a reply on May 3. On May 8, 2017, Khamnei filed a "corrected" opposition, a response to the statement of undisputed material facts, and a sur-reply. South Dakota asks the court to disregard Khamnei's May 8, 2017 filings as untimely.

The court explicitly allowed Khamnei until May 8, 2017 to respond to South Dakota's motion for summary judgment. Khamnei filed his "corrected" opposition and response to South Dakota's statement of undisputed material facts on that date. Under the circumstances, the court will consider those documents in ruling on the pending

motion for summary judgment. Neither Rule 56 nor Rule 78(b)(1) allow for the filing of a sur-reply, however. The court will disregard Khamnei's sur-reply.

Undisputed Facts

South Dakota foreclosed on real property located at 449 South Prospect Street in Burlington, which was pledged as security for a commercial loan made by South Dakota. In the foreclosure action, the court entered a Judgment and Degree of Foreclosure by Judicial Sale on April 6, 2015, which provides: "At the sale, the person holding the public sale shall sell to the highest bidder the Mortgaged Property, subject to property taxes and municipal assessments, if any."

A public auction was held on May 20, 2016, and Khamnei was the winning bidder at $500,000. The Thomas Hirchak Company provided a brochure to all registered bidders at the auction, which states on the first page: "Terms: All of the Mortgaged Property shall sell to the highest bidder, subject to property taxes and municipal taxes, if any." The brochure further states, under "Statistics":

Assessment.......................$560,000
Year Taxes........................$14,279.44
Past Due Taxes.................None as of 4/15/16
         Next Installment due June 2016 ($3,569.86)

As the winning bidder, Khamnei executed a purchase and sale agreement governing the purchase of the property. Paragraph 8 of that contract provides:

> The Property will be sold subject to any monies due to and liens of the City of Burlington for real estate taxes and assessments, municipal water or sewer assessments, if any (delinquent and current), and any liens or encumbrances with priority to the lien of the Plaintiff's mortgage upon which the Decree is based. Purchaser shall be solely responsible to pay any amounts secured by municipal liens or other senior liens or encumbrances on the property.

Auction Sale & Purchase Agreement ¶ 8.[1] The contract also states that closing shall occur "within 10 days after confirmation by the court or Forty-Five (45) days from date of auction (the "Closing Date"), whichever is longer; at such place as mutually agreeable by the parties." Id. ¶ 4. The contract further includes a provision for attorney's fees: "If Plaintiff is required to enforce any of its rights under this Agreement, it shall be entitled to recover from Purchaser its reasonable attorney's fees, court costs and other expenses incurred by it in connection with the enforcement of those rights or in defending an action brought by the Purchaser." Id. ¶ 16.

---

[1] As the plaintiff in the underlying foreclosure action, South Dakota Development Corporation is referred to as "Plaintiff" in the Auction Sale & Purchase Agreement. South Dakota is, of course, the defendant in the present action.

This court confirmed the sale of the property to Khamnei by Confirmation Order dated September 12, 2016. Because Khamnei was on vacation from September 17–24, 2016, he requested a closing date of September 30, 2016, to which South Dakota agreed. The closing occurred at Khamnei's attorney's office on that date. Khamnei was represented by counsel prior to and at the closing of the sale. In connection with the closing, Khamnei's counsel prepared a HUD-1 Settlement Statement itemizing all costs and expenses for the sale. Section J of the HUD-1 statement, which summarizes the gross amount due from the buyer, includes at line 104 "Delinquent Taxes" in the amount of $8004.16. Khamnei's counsel sent the HUD-1 statement to South Dakota's counsel prior to the closing. While Khamnei objected to paying the taxes, he agreed to close and subsequently litigate the contract language regarding taxes. It is not clear whether or when those taxes were actually paid to the City of Burlington, but is undisputed that South Dakota did not pay them.

Khamnei now seeks reimbursement from South Dakota for the taxes. South Dakota contends it has no obligation to pay Khamnei for the taxes.

Discussion

This dispute turns principally upon the interpretation of the Auction Sale & Purchase Agreement, signed by the parties on May 20, 2016. The issue is whether that contract obligates South Dakota to pay taxes that might have accrued on the subject property between the auction date and the closing date.

Ordinarily, the interpretation of a contract is a question of law. Cate v. City of Burlington, 2013 VT 64, ¶ 15, 194 Vt. 265 (citing Dep't of Corr. v. Matrix Health Sys., P.C., 2008 VT 32, ¶ 11, 183 Vt. 348). "A contract is interpreted foremost to give effect to the parties' intent, which is reflected in the contractual language, if that language is clear." B & C Mgmt. Vermont, Inc. v. John, 2015 VT 61, ¶ 11 (citing R & G Props., Inc. v. Column Fin., Inc., 2008 VT 113, ¶ 17, 184 Vt. 494). The court must consider the contract "as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible." Matrix Health Sys., 2008 VT 32, ¶ 12 (quoting Main St. Landing, LLC v. Lake St. Ass'n, 2006 VT 13, ¶ 7, 179 Vt. 583 (mem.)). However, when ambiguity exists, interpretation of the contract becomes a question of fact for the factfinder to resolve and summary judgment is inappropriate. Id. "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." B & C Mgmt. Vermont, Inc., 2015 VT 61, ¶ 11 (quoting Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 579 (1988)).

As quoted above, the Auction Sale & Purchase agreement provides in relevant part that the property "will be sold subject to any monies due to and liens of the City of Burlington for real estate taxes and assessments . . . if any (delinquent and current) . . . ." Auction Sale & Purchase Agreement ¶ 8. That paragraph of the agreement goes on to say that the purchaser (here, Khamnei) "shall be solely responsible to pay any amounts secured by municipal liens or other senior liens or encumbrances on the property." Id. The contract also explicitly provided that closing would occur "within 10 days after

confirmation by the court or Forty-Five (45) days from date of auction (the "Closing Date"), whichever is longer

The term "subject to" is defined as "[l]iable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for." Black's Law Dictionary 1278 (5th ed. 1979). As used in the Auction Sale and Purchase agreement, that term plainly means that South Dakota is not responsible for paying any property taxes due to the City of Burlington for the property in question. The purchaser, Khamnei, agreed to take the property "subject to" the taxes. Khamnei offers no rational interpretation by which South Dakota was obligated to pay any taxes due. He contends that the contract is ambiguous because it "fails to state specifically that the property will be sold subject to the purchaser paying for any monies due . . . ." Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3–4. But what else could that provision mean? It clearly and unambiguously precludes any obligation on South Dakota's part to pay the outstanding taxes.

Khamnei complains that there were no outstanding taxes as of the public auction, May 20, 2016, and that the auction brochure stated that no past taxes were due as of April 15, 2016 and that the next installment of $3,569.86 was due in June 2016. While that might have been true, that does not somehow make South Dakota responsible for taxes that subsequently accrued, in light of the plain language of the contract. Property taxes of $8004.16 were owed at the time of the closing. Thus, the property was sold to Khamnei subject to those taxes.

Khamnei also cites 12 V.S.A. § 4935, which provides:

> A tax assessed upon mortgaged real estate in this State may be paid by the mortgagee or assignee of the mortgage upon such property. The amount so paid, including costs, if any, shall thereupon be added to and become a part of the debt or obligation secured by such mortgage.

As South Dakota correctly observes, while that statute entitles a mortgagee to pay property taxes on mortgaged property and then add that amount to the debt secured by the mortgage, it does not require the mortgagee to do so. As Khamnei offers no genuinely disputed material fact demonstrating that South Dakota has any responsibility for the $8,004.16 in taxes due, South Dakota is entitled to summary judgment.[2]

---

[2] The court ruled earlier in this decision that it would disregard Khamnei's sur-reply filed on May 8, 2017. The court notes that, even if it considered that sur-reply, it would not aid Khamnei's cause. In the sur-reply, Khamnei argues that the "TIME OF SALE" was the date of the auction, May 20, 2016. The logic of this argument is not clear. The sale did not close until September 30, 2016. Even assuming the "TIME OF SALE" was the date of the auction, that would appear to further undermine Khamnei's argument that he is not responsible for taxes that accrued after the auction.

PLAINTIFF'S MOTION TO AMEND COMPLAINT

Khamnei moves to amend his complaint to add a claim for consumer fraud. A party may amend their pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." V.R.C.P. 15(a). The Supreme Court of Vermont has recognized a liberal policy for permitting amendments to the pleadings. *See*, *e.g.*, Lillicrap v. Martin, 156 Vt. 165 (1991). Denial of a motion under Rule 15(a) may be justified based on the futility of amendment. Prive v. Vermont Asbestos Grp., 2010 VT 2, ¶¶ 12–13, 187 Vt. 280 (quoting Colby v. Umbrella, 2008 VT 20, ¶¶ 12–13, 184 Vt. 1). To determine whether a proposed amendment is "futile," the court must examine whether plaintiff's amended complaint would survive a 12(b)(6) motion to dismiss. Id. ¶ 13.

Preliminarily, the court observes that, in addition to consumer fraud, Khamnei apparently also seeks to add a claim for breach of contract. This makes no sense, as Khamnei's original complaint already includes a claim for breach of contract. *See* Compl. ¶ 18 ("This action is for breach of contract and specific performance of contract . . . ."). In any event, to the extent Khamnei did not previously allege a breach of contract claim, the proposed amendment is futile in light of the court's ruling above on South Dakota's summary judgment motion. South Dakota did not breach the Auction Sale & Purchase Agreement by failing to pay the $8,004.16 in taxes. Nor does Khamnei allege any additional material facts that would change the ruling.

The proposed consumer fraud claim is also futile. The consumer protection act prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." 9 V.S.A. § 2453(a). "Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 . . . , or who sustains damages or injury as a result of" any such prohibited representations or practices, may sue and recover damages from the "seller, solicitor, or other violator . . . ." 9 V.S.A. § 2461(b). It appears that Khamnei is not a "consumer" under the act, nor has he alleged or cited any authority suggesting that he is a "consumer." *See* id. § 2451a(a).

Moreover, despite Khamnei's argument that South Dakota "made numerous misleading representations . . . through advertisements and a contract," Pl.'s Mot. to Am. Compl. at 2, the proposed amendment fails to identify any misrepresentations or deceptive acts that misled Khamnei. Indeed, the documents Khamnei attached to his own complaint, including a pre-auction brochure, the contract, and the foreclosure judgment, all note that the property will be sold to the highest bidder "subject to property taxes and municipal asessments."

The proposed amendment (as well as the original amendment) cites the "Auctioneer's Disclaimer," which reads: "Announcements from the Auction Block will take precedence over any previous printed material or any other oral statements made." Khamnei alleges that "[t]he Auctioneer did NOT give warning that delinquent taxes were due or that the purchaser would be responsible for taxes due for the time between . . . the auction and the closing of the property." Am. Compl. ¶ 6; Compl. ¶ 6. The fact that the

auctioneer did not mention taxes does not negate the prior *and subsequent* clear statements that the purchaser would buy the property "subject to" real estate taxes. There was simply no misrepresentation.

Khamnei also alleges—both in the proposed amendment and the original complaint—that "[b]ecause the property was advertised with no past due taxes, the purchaser was made to believe he was responsible for at most 10 days of taxes . . . ." Am. Compl. ¶ 12; Compl. ¶ 9. This allegation is completely meritless. The contract patently provides that closing shall occur "within 10 days after confirmation by the court or Forty-Five (45) days from date of auction (the "Closing Date"), whichever is longer; at such place as mutually agreeable by the parties." Auction Sale & Purchase Agreement ¶ 4. Khamnei had ample notice that the time between the auction and closing could take significantly longer than 10 days. Again, there was clearly no  misrepresentation by South Dakota.

Additionally, Khamnei argues that South Dakota "forced the execution of the contract by threatening to sell the property to a different buyer and withholding [his] earnest money." Pl.' Mot. to Am. Compl. at 2. Once again, this was not a misrepresentation. South Dakota merely reiterated its rights under the contract:

> In the event the Purchaser shall fail to pay the balance of said purchase price on the Closing Date, Plaintiff shall have the right to request that the Court make an order forfeiting the deposit and vacating the confirmation order. Plaintiff shall also have the right to request that the court issue a confirmation order for sale to the second highest bidder.

Auction Sale & Purchase Agreement ¶ 5.

In short, the proposed amendment really alleges nothing more than what was already alleged in the original declaratory judgment and breach of contract complaint. *See* Greene v. Stevens Gas Serv., 2004 VT 67, ¶ 15, 177 Vt. 90 ("a mere breach of contract cannot be sufficient to show consumer fraud") (citing Winey v. William E. Dailey, Inc., 161 Vt. 129, 136 (1993)). Because the proposed amendment is futile, it is denied.

<u>ATTORNEY'S FEES</u>

Lastly, South Dakota seeks attorney's fees in this action pursuant to paragraph 16 of the Auction Sale & Purchase Agreement. That paragraph provides: "If Plaintiff is required to enforce any of its rights under this Agreement, it shall be entitled to recover from Purchaser its reasonable attorney's fees, court costs and other expenses incurred by it in connection with the enforcement of those rights *or in defending an action brought by the Purchaser*." (emphasis added).[3]

---

[3] As noted above, the "Plaintiff" in the Auction Sale & Purchase Agreement is South Dakota Development Corporation, the defendant here.

It is well established that attorney's fees are recoverable pursuant to a contractual provision. *See* Harsch Properties, Inc. v. Nicholas, 2007 VT 70, ¶¶ 11–20, 182 Vt. 196 (affirming award of attorney's fees for party who prevailed on good faith and fair dealing claim where underlying contract specifically provided for recovery of such fees); Ianelli v. Standish, 156 Vt. 386, 389 (1991) (granting fees due under a real estate transaction contract to the prevailing party as a matter of law). "When a contract provides for attorney's fees, Vermont courts are loath to revise the agreement struck by the parties and deny them the benefit of their bargain." Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 5, 178 Vt. 77.

The contract at issue here clearly provides that South Dakota's attorney's fees are recoverable in defending an action brought by Khamnei with respect to the contract, which is exactly what happened here. Khamnei contends that South Dakota seeks attorney's fees "pursuant to 12 V.S.A. § 4937 on merits not yet heard." Pl.'s Statement of Disputed Material Facts ¶ 22. This contention is incorrect. South Dakota seeks fees pursuant to a contractual provision, and the court will enforce the contract.

Order

Defendant's motion for summary judgment is granted.

Plaintiff's motion to amend complaint is denied.

Defendant is entitled to attorney's fees, costs, and expenses incurred in defending against this action pursuant to the contract. Defendant shall submit, no later than October 17, 2017, a sworn affidavit detailing the amount of fees, costs, and expenses it incurred in defending against this action.

SO ORDERED this 3rd day of October, 2017.

_____
Robert A. Mello
Superior Court Judge

7