STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| **In re Shenandoah, LLC, <u>et al.</u>** | } | **Docket No. 245-10-08 Vtec** |
| **(Appeal of Act 250 JO #9-066)** | } | |
|  | } | |

## <u>Decision on Motion for Summary Judgment</u>

Appellants Shenandoah, LLC; Ferrisburgh Realty Investors, LLC; Bluefield, LLC; Witherbee, LLC; Mahaiwe, LLC; Shlansky Family Irrevocable Trust; David Shlansky, Esq.; Ting Chang[1]; Asa Shlansky; Beatrice Shlansky; and Pedro Zevallos (Appellants), appeal from a jurisdictional opinion of the Act 250 District #9 Environmental Commission Coordinator (District Coordinator), attributing a certain number of subdivided lots and housing units to each of the Appellants for purposes of an Act 250 jurisdictional trigger. The District Coordinator also concluded that the proposed Shade Roller Planned Unit Development requires an Act 250 land use permit, but Appellants chose not to specifically preserve that issue for our review in this appeal.

Appellants are represented by Justin Kolber, Esq. The City of Vergennes, the Agency of Natural Resources, and the Natural Resources Board have each entered appearances for informational purposes, but have indicated that they will not take an active role in this appeal.

Now pending before the Court is Appellants' "Memorandum of Law" and "Proposed Order." The present appeal is before the Court <u>de novo</u>. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). Appellants have not specified the nature of their motion, but have submitted documentary evidence and affidavits for the Court's consideration along with the memorandum. Accordingly, we treat Appellants' filings as a motion for summary judgment under V.R.C.P. 56.

## <u>Factual Background</u>

The following material facts are undisputed:[2]

## I.    General procedural and factual background

1.    In 2000, the Shlansky Family Irrevocable Trust (the Trust) was created by David Shlansky to benefit the children of David Shlansky and his wife, Ting Chang. As of June 2009,

---

[1]  Some of Appellants' filings refer to Ting Chang and some refer to Ting Shlansky; as her own affidavit is signed "Ting Chang," the Court will refer to her as such.

[2]  We have concluded that the following facts are undisputed, at least for purposes of the present motion, because the motion is unopposed.

the Trust had two beneficiaries: Asa Shlansky (age 9) and Beatrice Shlansky (age 7). Ting Chang is the fiduciary trustee of the Trust. The purpose for which Mr. Shlansky and Ms. Chang established this Trust has not been disclosed to the Court. We are left to presume (as did the District Coordinator below) that Mr. Shlansky and Ms. Chang established the Trust and conveyed real estate to it in order to benefit their minor children and for general estate planning purposes. Mr. Shlansky and Ms. Chang have not provided the Court with evidence to the contrary.

2. The Trust owns an interest in three other entities that have engaged in land development activities within the jurisdictional area of the District #9 Commission: Witherbee, LLC (Witherbee); Ferrisburgh Realty Investors, LLC (FRI); and Bluefield, LLC (Bluefield). Witherbee is owned exclusively by the Trust; FRI and Bluefield are owned by the Trust and Pedro Zavallos.

3. David Shlansky owns, manages, and controls Mahaiwe, LLC (Mahaiwe), another entity that has engaged in land development activities within the District #9 Commission area.

4. Shenandoah, LLC (Shenandoah) is owned by the Trust and Pedro Zavallos. David Shlansky is the Manager of Shenandoah, but its activities are controlled by Pedro Zavallos. David Shlansky holds no equity in Shenandoah; he derives a fee for his services as Shenandoah's attorney and manager.

5. Shenandoah proposes to construct a 10-unit residential housing project, known as the Shade Roller Planned Unit Development (Shade Roller PUD), at property located at 1-2 Canal Street in Vergennes. On August 26, 2008, Shenandoah requested a jurisdictional opinion from the District Coordinator to determine whether the proposed project requires an Act 250 permit. Shenandoah also asked for clarification of two issues relevant to this determination: "[t]he current total subdivision and housing unit counts for the owners and manager of Shenandoah, LLC, for Act 250 jurisdictional purposes and the timing of units used in such computations;" and "[w]hat the total housing unit counts for the owners and manager of Shenandoah, LLC, will be as a result of the Shade Roller [PUD]."

6. The District Coordinator issued his decision on September 24, 2008, determining that the proposed Shade Roller PUD requires an Act 250 permit, and attributing a certain amount of subdivision lots and housing units, for purposes of Act 250 jurisdiction, to FRI, Bluefield, Shenandoah, David Shlansky, Ting Chang, Asa Shlansky, Beatrice Shlansky, and Pedro Zavallos, based on their relationship to the Trust and/or the companies owned by the Trust.

2

Housing units were also attributed to David Shlansky and Ting Chang based on David Shlansky's involvement with Mahaiwe. Appellants appeal from this jurisdictional opinion.

## II.     The entities and developments involved in this appeal

7.     FRI is owned by the Trust and Pedro Zavallos and managed by Pedro Zavallos. FRI created a 21-lot planned residential development (PRD) in Ferrisburgh, known as the Pierce Woods subdivision.[3] FRI subdivided the lots but was not involved with the construction of any housing units. The plot plan for this PRD was filed in the town records on September 4, 2008.

8.     Bluefield is owned by the Trust and Pedro Zavallos. David Shlansky is the Manager of Bluefield, but its activities are controlled by Pedro Zavallos. David Shlansky holds no equity in Bluefield; he derives a fee for his services as Bluefield's attorney and manager. In 2007, Bluefield subdivided a 10.10-acre lot located off Sand Road in North Ferrisburgh, creating two lots of 5.05 acres each.[4] Bluefield subdivided the lots but was not involved with the construction of any housing units. The subdivision plat was filed in the town land records on September 7, 2007.

9.     Witherbee is owned exclusively by the Trust and is controlled and managed by David Shlansky. Witherbee constructed five housing units in the "Stevens House" at 186 Main Street in Vergennes; construction for this project began on March 7, 2007.

10.     David Shlansky owns, manages, and controls Mahaiwe, LLC (Mahaiwe). Mahaiwe constructed four housing units in the "Grist Mill" property located at 360 Main Street in Vergennes; construction for this project began on November 18, 2005.

## Discussion

In considering the pending motion, we first note that summary judgment is only appropriate where "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The party requesting summary judgment bears the burden of proof. Travelers Ins. Cos. v. Delmarle, Inc., 2005 VT 53, ¶ 3, 178 Vt. 570 (mem.). Even though Appellants' motion is unopposed, "we must review the

---

[3] The municipal permit approval of the Pierce Woods subdivision was the subject of an appeal to this Court. See In re Pierce Woods PRD and Subdivision Application, No. 32-2-06 Vtec (Vt. Envtl. Ct. Feb. 28, 2007), aff'd, 2008 VT 100.

[4] Appellants assert that this subdivision only resulted in one new lot. The lot count is the subject of our Discussion section below, at page 7.

material facts and may only grant Appellants' motion if we determine that the applicable law directs that Appellants are entitled to judgment." In re Outdoors in Motion, Inc., Act 250 Amendment, No. 208-9-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Dec. 26, 2006) (Durkin, J.) (unpublished entry order, available at http://www.vermontjudiciary.org/GTC/Environmental /Opinions.aspx) (citing In re Appeal of Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190); e.g., In re Bergmann Act 250 Subdivision, No. 158-8-05 Vtec, slip op. at 6 (Vt. Envtl. Ct. Mar. 12, 2008) (Wright, J.) (citing 10 V.S.A. § 8504(h)). When appropriate, summary judgment "may be rendered against the moving party." V.R.C.P. 56(c)(3); see In re Appeal of Hildebrand, 2007 VT 5, ¶ 9, 181 Vt. 568 (mem.) (quoting V.R.C.P. 56(c)(3)).

In the present appeal, Appellants have asked the Court to resolve legal questions relating to the number of subdivided lots and housing units attributable to each of the Appellants for purposes of Act 250, which is related to the question of whether future development by Appellants will require Act 250 permits.

Under Act 250, "[n]o person shall sell or offer for sale any interest in any subdivision located in this state, or commence any construction on a subdivision or development, or commence development without a permit," subject to certain exceptions that are not relevant to this appeal. 10 V.S.A. § 6081(a). The questions raised in this appeal turn on the definitions of "person," "subdivision," and "development," as used in this provision.

It appears that Shenandoah has not yet begun development of the Shade Roller PUD, based on the fact that it requested a jurisdictional opinion determining whether a permit was required for this development. To determine whether the Shade Roller PUD requires a permit, the number of subdivided lots and housing units attributable to Shenandoah must be established.[5] Even if Shenandoah has not created any subdivided lots or housing units at this time, subdivided lots and housing units created by entities and individuals affiliated with Shenandoah may be attributable to Shenandoah if certain conditions are met.

## I. The number of subdivided lots attributable to Appellants for purposes of Act 250

We first address how many of the lots subdivided by other entities are attributable to Shenandoah and its owners and manager for the purposes of Act 250 jurisdiction, as that was one of the questions raised in the original request for a jurisdictional opinion. In this appeal, Appellants also request that we determine whether it is appropriate to attribute any subdivided

---

[5] We also note that because the proposed Shade Roller PUD includes 10 units, Act 250 jurisdiction arises in its own right, as determined by the District Coordinator, which determination Appellant did not appeal.

lots to Ting Chang, Asa Shlansky, or Beatrice Shlansky, and whether the subdivisions created by certain entities in this appeal can be attributed to other entities in this appeal. The District Coordinator attributed subdivisions to these individuals and entities based on their affiliations with Shenandoah and each other.

"Subdivision" is defined in 10 V.S.A. § 6001(19) as:

a tract or tracts of land, owned or controlled by a person, which the person has partitioned or divided for the purpose of resale into 10 or more lots within a radius of five miles of any point on any lot, or within the jurisdictional area of the same district commission, within any continuous period of five years. In determining the number of lots, a lot shall be counted if any portion is within 5 miles or within the jurisdictional area of the same district commission. . . .

Therefore, a subdivision only requires an Act 250 permit if it involves the creation of 10 or more lots, or if the "person" who owns or controls the land to be subdivided has subdivided other lots within the required area such that the total number of lots created or proposed to be created by that person is 10 or more within a continuous period of five years.

Appellants have not argued that any of the subdivisions created by the entities involved in this appeal are outside the area required by 10 V.S.A. § 6001(19), nor have they argued that those subdivisions did not occur within a continuous period of five years.[6] We therefore do not further address these legal issues. The only legal issues challenged by Appellants as to subdivisions relate to the definition of "person," as used in § 6001(19), and whether the subdivisions created by certain entities in this appeal can be attributed to certain Appellants.

Rule 2(C)(1)(b) of the Act 250 Rules, duly adopted by the Vermont Natural Resources Board, defines "person," for the purposes of the term "subdivision," by reference to the definition of "person" in 10 V.S.A. § 6001(14)(A).[7] As defined in this provision, "person":

(i) shall mean an individual, partnership, corporation, association, unincorporated organization, trust or other legal or commercial entity, including a joint venture or affiliated ownership;

(ii) means a municipality or state agency;

(iii) includes any individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived from the partition or division of land;

---

[6] Act 250 Rule 2(B) addresses the commencement of the continuous five-year period; Appellants have not disputed the District Coordinator's determinations under this provision.

[7] Act 250 Rule 2(C)(1)(b) actually refers to the definition of "person" in 10 V.S.A. § 6001(14)(iii), a section of the statute that does not exist. We regard this as a typographical omission of a reference to subsection (A). Further, we rely upon Appellants' reference to the definition of "person" in § 6001(14)(A), to which the District Coordinator also referred in his jurisdictional opinion.

(iv) includes an individual's parents and children, natural and adoptive, and spouse, unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the parent, child, or spouse; . . .

Based on its plain language, this definition expressly includes individuals and entities affiliated with the "person" who owns or controls the land to be subdivided, even if those affiliated individuals and entities do not themselves own or control the land. See In re Eustance Act 250 Jurisdictional Opinion, 2009 VT 16, ¶ 14 (explaining that courts look to the plain language of a statute as evidence of the legislature's intent). This interpretation is supported by In re Spencer, 152 Vt. 330 (1989), in which the Vermont Supreme Court explained that the legislative findings accompanying the then-recent amendment to Act 250's definition of "person" stated that "it is necessary to treat persons with an affiliation for profit, consideration, or some other beneficial interest derived from the partition or division of land as a single person for the purpose of determining whether a particular conveyance is subject to Act 250 jurisdiction." Id. at 339 (quoting 1987, No. 64, § 1). The Spencer Court explained that ownership interests are "aggregat[ed]" under Act 250, and that "absolute ownership and control by an individual is not required for Act 250 jurisdiction." Id. The generally acknowledged rationale for this jurisdictional reach of Act 250 is to protect the state's land from the potential dangers of unregulated development, when such development is conducted by separate but related parties. See In re Eastland, Inc., 151 Vt. 497, 499–500 (1989).

Pedro Zavallos and the Trust are the owners of Shenandoah. As such, all subdivisions attributable to Zavallos and the Trust are also attributable to Shenandoah, as they are "individuals and entities affiliated with each other for profit." 10 V.S.A. § 6001(14)(A)(iii). Zavallos and the Trust also own Bluefield and FRI, making these four parties "individuals and entities affiliated with each other for profit" within the meaning of § 6001(14)(A)(iii). Therefore, the 21 lots created by FRI in 2008 and the lots created by Bluefield in 2007 are attributed to Zavallos, the Trust, and Shenandoah for purposes of Act 250.

Appellants question whether FRI, Bluefield, and Shenandoah are sufficiently related for the purposes of Act 250 for the subdivisions created by each of these entities to be attributable to each other. FRI, Bluefield, and Shenandoah are all owned by Zavallos and the Trust. With respect to each of these entities, Zavallos and the Trust are "persons" within the meaning in 10 V.S.A. § 6001(14)(A)(i). With respect to each other, FRI, Bluefield, and Shenandoah are "entities affiliated with each other for profit," based on the aggregation of Zavallos' and the

6

Trust's ownership interests in each of these entities. See Spencer, 152 Vt. at 339. Accordingly, the subdivisions created by FRI and Bluefield are attributable to each other and to Shenandoah for the purposes of Act 250, as well as to their common owners, Mr. Zavallos and the Trust.

## II. How the number of lots created by a subdivision should be counted

Appellants argue that Bluefield's 2007 subdivision should count as only one subdivided lot instead of two. This argument is based on the premise that the subdivision created only one new lot, as one lot existed before the subdivision and two lots existed after. This premise, however, lacks a logical foundation. Bluefield's 2007 subdivision created two new lots, each one being only a portion of the lot that previously existed; by this subdivision, the original lot no longer existed. Therefore, the 2007 Bluefield subdivision results in two lots being attributed to the parties for purposes of Act 250. Accordingly, at this time, Zavallos, the Trust, Shenandoah, FRI, and Bluefield are each attributed a total of 23 subdivided lots for purposes of Act 250.

## III. What subdivided lots are attributable to individual Appellants for purposes of Act 250

Appellants assert that David Shlansky, Ting Chang, Asa Shlansky, and Beatrice Shlansky do not meet the statutory definition of "person" for the purposes of attributing the subdivided lots created by Bluefield and FRI. Determining whether these subdivided lots should be attributed to these individuals requires analysis of the relationship between these individuals and the entities creating the subdivisions.

Asa and Beatrice Shlansky are not the owners or managers of FRI or Bluefield; however, they are the beneficiaries of the Trust that owns FRI and Bluefield. Any profits accumulated by FRI and Bluefield will be received, at least in part, by the Trust, and then will be available to Asa and Beatrice Shlansky, according to the terms of the Trust. Asa and Beatrice Shlansky are therefore affiliated with FRI and Bluefield for a "beneficial interest derived from the partition or division of land." 10 V.S.A. § 6001(14)(A)(iii). The fact that they are minors is not relevant to our analysis on this point, as Act 250 does not exclude minors from its definition of "person." See id. Accordingly, the 21-lot subdivision created by FRI in 2008 and the 2-lot subdivision created by Bluefield in 2007 are attributed to Asa and Beatrice Shlansky, for a total of 23 subdivided lots attributed to each of these parties for the purposes of Act 250.

David Shlansky is not the owner or manager of FRI, but he acts as an "agent" of FRI "in an advisory role and as an attorney." (Shlansky Aff. ¶ 3). He derives a fee for his services, but does not hold equity in FRI. However, FRI is owned by the Trust, which was created by David

7

Shlansky for the benefit of the children of David Shlansky and Ting Chang. Any profits accumulated by FRI will be received, at least in part, by the Trust, and will therefore benefit David Shlansky and Ting Chang's children.[8]

The definition of "person" specifically includes "an individual's parents . . . ." 10 V.S.A. § 6001(14)(A)(iv). Because we have established that Asa and Beatrice Shlansky will or have received a beneficial interest from the Bluefield and FRI subdivisions, their parents David Shlansky and Ting Chang also meet the definition of "person" in § 6001(14)(A)(iv).

Subsection (14)(A)(iv) notes that the assumption that there is an affiliation between parent and child may be refuted; it places the burden of proving the lack of a factual foundation for the affiliation between parent and child. Appellants assert that David Shlansky and Ting Chang personally will not receive a benefit from the subdivisions created by companies owned by the Trust, and that they therefore are not "persons" under 10 V.S.A. § 6001(14)(A). However, Appellants have provided no specific evidence to refute the presumption of subsection (14)(A)(iv), and what evidence we do have provides a factual foundation to support the statutory presumption.

David Shlansky, as settlor of this Trust, contributed to the Trust the property which is the subject of the subdivision and development at issue in these proceedings. As the parents of the sole beneficiaries, both of whom are minors, the actions of the Trust will have the effect of providing financial support and benefit to the very children whom David Shlansky and Ting Chang have a parental obligation to support. To the extent that the Shlansky Trust provides funds for the education and care of the Shlansky minor children, David Shlansky and Ting Chang receive the collateral benefit of having their minor children provided for by the Trust.

The fact that IRS rules regarding irrevocable trusts require relinquishment of control of and benefit from assets contributed to the Trust does not dissuade us from our conclusion, summarized above, that David Shlansky and Ting Chang have not fulfilled their evidentiary burden of exempting themselves from being included within the statutory definition of "persons" contained in § 6001(14)(A)(iv). To the extent that their minor children benefit from the Trust, in that the Trust will provide for their children, David Shlansky and Ting Chang benefit as well. Therefore, the 21-lot subdivision created by FRI and the two-lot subdivision created by Bluefield are also attributed to David Shlansky and Ting Chang, solely for the purposes of Act 250

---

[8] David Shlansky represents in Appellants' Statement of Questions #12 that the Trust declaration includes a directive for the "provision of funds for education and care of Beatrice and Asa Shlansky . . . ."

8

jurisdiction.

Based on the foregoing analysis, we conclude as a matter of law from the undisputed facts, even when viewed in a light most favorable to Appellants, that all Appellants (with the exception of Witherbee and Mahaiwe) are "persons" for purposes of Act 250 jurisdiction in connection with the 23 lots created as part of the Pierce Woods and Bluefield subdivisions.

Appellants have also requested that the Court determine whether they can create any further subdivisions without an Act 250 permit. The permit requirement for Act 250 is contained in 10 V.S.A. § 6081(a), which states: "No person shall sell or offer for sale any interest in any subdivision located in this state, or commence construction on a subdivision or development, or commence development without a permit." As each of these parties have been found to meet the definition of "person," and each of these parties have been attributed more than 10 subdivided lots within the jurisdictional area and time period expressed in 10 V.S.A. § 6001(19), at this time none of these parties may "sell or offer for sale any interest in any subdivision located in this state, or commence construction on a subdivision," without first securing an Act 250 permit. 10 V.S.A. § 6081(a).

## IV. The number of housing units attributed to Appellants for purposes of Act 250

Appellants have also raised the issue of the number of housing units that are attributable to the parties to this appeal for purposes of Act 250 jurisdiction. The number of housing units attributable to each party is relevant to determining whether future development proposed by Appellants requires an Act 250 permit. Due to the similarity in statutory language, our analysis of "persons" involved in "development" is similar to our prior analysis of "persons" involved in "subdivisions."

"Development" is defined in 10 V.S.A. § 6001(3)(A)(iv) as:

The construction of housing projects such as cooperatives, condominiums, or dwellings, or construction or maintenance of mobile homes or trailer parks, with 10 or more units, constructed or maintained on a tract or tracts of land, owned or controlled by a person, within a radius of five miles of any point on involved land, and within any continuous period of five years.

For the purposes of "development," Act 250 Rule 2(C)(1)(a) defines a "person" as:

an individual, partnership, corporation, association, unincorporated organization, trust or other legal or commercial entity, including a joint venture or affiliated ownership; a municipality or state agency; and individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived

from the development of land.[9]

Based upon this definition and the above analysis, Shenandoah, Zavallos, and the Trust are each regarded as a "person" to which the subject development is attributable, as that term is used in 10 V.S.A. § 6001(3)(A)(iv). Once the 10 housing units proposed to be created by Shenandoah are constructed, they will be attributable to Shenandoah, Zavallos, and the Trust, solely for purposes of Act 250 jurisdiction.[10]

When constructed, the 10 housing units proposed to be created by Shenandoah will also be attributable to Asa and Beatrice Shlansky. As described above, Asa and Beatrice Shlansky are the Trust's beneficiaries, and as such, are affiliated with the Trust for a "beneficial interest derived from the development of land."

Shenandoah's proposed 10 housing units, when constructed, will also be attributable to David Shlansky and Ting Chang for purposes of Act 250. As described above, to the extent that their minor children benefit from the Trust's development activities, David Shlansky and Ting Chang benefit as well. Profits accumulated by the Trust will provide for the children of David Shlansky and Ting Chang, which will thereby diminish the parents' burden to provide for their minor children. David Shlansky and Ting Chang did not provide any evidence to indicate that they will not benefit from the Trust's providing for their minor children. We therefore conclude from the record before us that David Shlansky and Ting Chang are deemed affiliated with the Trust for a "beneficial interest derived from the development of land."

Witherbee is owned by the Trust and controlled by David Shlansky. As such, the five housing units constructed by Witherbee are attributable to the Trust and David Shlansky for purposes of Act 250. Those housing units are also attributable to Asa and Beatrice Shlansky, as beneficiaries of the Trust who derive a beneficial interest from the Trust's land development activities. Witherbee's housing units are attributable to Ting Chang as well, because of the

---

[9] We note that Act 250 Rule 2(C)(1)(a) defines "person" for purposes of "development" in a different manner than the term "person" is defined by Act 250 Rule 2(C)(1)(b) for purposes of "subdivision." The difference is summarized in one manner: for purposes of "development," "person" does not include an individual's "parents and children," as included in Rule 2(C)(1)(b).

[10] Appellants in their Statement of Questions #28–33 make reference to the common law maxim that lawfully created and maintained corporations are viewed as separate legal entities. Our determination here does not run afoul to that common law maxim. Rather, our determination here solely relates to an interpretation of the jurisdictional triggers for affiliated parties under the applicable provisions of Title 10 and Act 250 Rules. This affiliation goes no further, even in the very Act 250 proceedings at issue here, as is evidenced by the fact that these parties, while regarded as affiliated parties for jurisdictional purposes, are not compelled to be co-applicants for projects in which they have no ownership interest.

10

beneficial interest she derives from the Trust providing for her children.

Additional housing units are attributable to David Shlansky based on his ownership, management, and control of Mahaiwe, an entity that began construction of four housing units within the jurisdictional area required by 10 V.S.A. § 6001(3)(A)(iv) in 2005.

Accordingly, based on the foregoing, for the purposes of Act 250: Pedro Zavallos is not attributed any housing units at this time, but Shenandoah's 10 housing units will be attributable to him when constructed; at this time, the Trust is attributed Witherbee's five housing units, and Shenandoah's additional 10 housing units will be attributable to the Trust when constructed; at this time, Asa and Beatrice Shlansky are attributed Witherbee's five housing units, and Shenandoah's additional 10 housing units will be attributable to them when constructed; at this time, Ting Chang is attributed Witherbee's five housing units, and Shenandoah's additional 10 housing units will be attributable to her when constructed; at this time, David Shlansky is attributed Witherbee's five housing units and Mahaiwe's four housing units for a total of nine housing units, and Shenandoah's additional 10 housing units will be attributable to him when constructed.

Because Act 250 requires a permit for development of 10 or more housing units, at this time, Pedro Zavallos may construct up to nine housing units without first securing an Act 250 permit; the Trust may construct up to four housing units without first securing an Act 250 permit; Asa and Beatrice Shlansky may construct up to four housing units without first securing an Act 250 permit; Ting Chang may construct up to four housing units without first securing an Act 250 permit; and David Shlansky may not construct any housing units without first securing an Act 250 permit. Once Shenandoah's 10 housing units are constructed, development by any of these parties within the jurisdictional area in a continuous period of five years will require an Act 250 permit. 10 V.S.A. §§ 6001(3)(a)(iv), 6081(a).

**V. Determination of Dates of Construction**

Appellants have also asked this Court to determine whether the District Coordinator properly determined "the correct dates of construction commencement" in his opinion.[11] However, Appellants have not provided any evidence from which the Court can determine when construction began on the housing units created by Witherbee or Mahaiwe. In any event, in the

---

[11] Although the question actually asks whether the "NRB" properly determined the dates of construction commencement, we presume Appellants meant to inquire whether the District Coordinator's determination on this issue was proper, as the NRB did not make any such determination.

factual portion of their memorandum, Appellants assert that Witherbee's construction began on March 7, 2007, and that Mahaiwe's construction began on November 18, 2005. These are the same dates provided by the District Coordinator in his opinion; it therefore appears to the Court that no dispute on this point has been presented to the Court. We therefore have no legal basis for disturbing the District Coordinator's determination on this point.

## VI. Arguments that relate to the District Coordinator's attribution of housing units and subdivisions to Appellants

Appellants argue that the District Coordinator improperly went beyond the scope of the questions in the original request for a jurisdictional opinion, and that his attribution of housing units and subdivisions to some Appellants cannot stand. The original request sought clarification of "the current total subdivision and housing unit counts for the owners and manager of Shenandoah, LLC, for Act 250 jurisdictional purposes . . . ." (Appellants' Ex. A). The District Coordinator's written decision attributes subdivisions and housing units to individuals who are not the owners or manager of Shenandoah, but who are affiliated to the entities and individuals who own and manage Shenandoah.

We find no merit in this argument. Appellants have not provided any authority for their assertion that a District Coordinator is limited to answering the specific questions raised in a jurisdictional opinion. In that sense, a jurisdictional opinion is unlike an appeal to this Court, in which we are limited to addressing the issues raised in the statement of questions. V.R.E.C.P. 5(f). Although the original request for a jurisdictional opinion may have posed narrow questions, the District Coordinator's authority to address those questions flows from the statute. See 10 V.S.A. § 6007(c). The applicable statutory definition specifically includes parents, children, and spouses (for purposes of subdivisions), as well as anyone else who derives "profit, consideration, or any other beneficial interest" from the land development activities at issue (for purposes of subdivisions and development). 10 V.S.A. § 6001(14)(A); Act 250 Rule 2(C)(1)(a), (b). In order to answer the questions posed, the District Coordinator properly considered the individuals and entities Appellants disclosed as being related to the owners and manager of Shenandoah.

Furthermore, as previously discussed, the statute provides the parties with an opportunity to disassociate themselves from the owners and managers of Shenandoah by fulfilling a burden of proof that they will not derive "profit, consideration, or any other beneficial interest" from the land development activities of related entities or individuals. 10 V.S.A. § 6001(14)(A)(iv). As previously discussed, Appellants have not provided any factual foundation to meet this burden.

12

Their general assertion that they derive no benefit from the Trust or other related entities cannot be viewed as fulfilling their burden of proof. See Gore v. Green Mtn. Lakes, Inc., 140 Vt. 262, 266 (1981) (explaining that to survive summary judgment, a party may not merely rely upon assertions or allegations).

## VII. Constitutional due process challenge

Appellants also argue that their due process rights have been violated because of a lack of prior notice to the parties whose interests were determined in the jurisdictional opinion. We are unable to decipher this claim, as Appellants have not indicated how or when they received notice of the decision. Clearly, notice was provided to them within the appeal period. Appellants have the right to appeal the portions of the District Coordinator's opinion that affect their respective interests, and they have exercised that right in the present appeal.

We further note that Appellants' constitutional challenge is misplaced, since it is a developer's duty in the first instance to provide notice of all individuals and other entities with whom the developer may be affiliated. See 10 V.S.A. § 6007(a) (requiring an "Act 250 Disclosure Statement" to be completed and filed when property is subdivided). The record before us does not reveal whether such a Disclosure Statement was prepared and filed by any of the Appellants here and, if so, whether it provided notice of the affiliations we have discussed here. We cannot discern how the District Coordinator could have provided notice to all Appellants here, if he had not been provided notice in the first instance of their existence and affiliation.

## VIII. Ownership and control as the sole determining factor.

Finally, Appellants argue that the definitions of "person" at issue in this appeal improperly look to economic ownership rather than control. Again, we find no merit in this argument. The Court's primary goal in interpreting a statute is implementing the intent of the Legislature, which may be inferred from the plain and unambiguous language of the statute. In re Eustance Act 250 Jurisdictional Opinion, 2009 VT 16, ¶ 14. Here, the language of 10 V.S.A. § 6001(14)(A) and Act 250 Rule 2(C)(1)(a), (b) evinces a clear intent to include relatives and other parties who derive benefit from the land development activities at issue, regardless of the related parties' level of control. Furthermore, the Vermont Supreme Court addressed this issue some time ago, holding that "absolute ownership and control by an individual is not required for Act 250 jurisdiction." In re Spencer, 152 Vt. 330, 339 (1989). To the extent that Appellants

13

believe these provisions should be amended, that is a policy question that should be taken up with the Legislature and is not properly addressed by this Court.  See <u>Fletcher Hill, Inc. v. Crosbie</u>, 2005 VT 1, ¶ 50, 178 Vt. 77.

We are unable to conclude that Appellants are "so clearly correct as to be entitled to judgment 'as a matter of law.'"  <u>Berlin Dev. Assocs. v. Dep't of Soc. Welfare</u>, 142 Vt. 107, 110 (1982).  We therefore conclude that Appellants' motion for summary judgment must be **DENIED** at this time.  Furthermore, we conclude that, even when considering the material facts in a light most favorable to Appellants, they are unable to meet their burden of showing there is "a genuine issue for trial."  V.R.C.P. 56(e).  Accordingly, we enter summary judgment against Appellants on all issues raised in this appeal.

### Conclusion

For all of the foregoing reasons, we **GRANT** summary judgment against Appellants on all issues raised in their pending appeal.  As a consequence, we do hereby **UPHOLD** the September 24, 2008 jurisdictional opinion of the District #9 Environmental Commission Coordinator.

This completes the current proceedings before this Court in this appeal.  A Judgment order accompanies this Decision.

Done at Berlin, Vermont, this 11th day of September, 2009.


_____
Thomas S. Durkin, Environmental Judge